Judge Lane
delivered the opinion of the court:
If the complainant come into equity to set up a specific lien to the two hundred acres of land, in virtue of his purchase, under the judgment against Carlisle and others, such claim is evidently groundless. The existence, validity, and extent of a judgment lien, are matters purely legal, dependent upon statutory provisions. If it fail at law, it can not be aided in equity. 3 Ohio, 517.
In 1824, at the time of his purchase, the complainant occupied the position of a judgment creditor of Carlisle. The levy, sale, and return of money made, on the execution, produced ^nothing [163 because Carlisle had no interest in the property sold, consequently the purchaser could obtain no interest. But this could not affect the case.
If complainant’s judgment against Carlisle still subsisted unsatisfied in fact, and open upon the record for the whole amount, the case shows only that Carlisle held a judgment in the same condition against IT. Coonrod. The amount of this judgment would be a debt due Carlise from Coonrod, which might, in a proper case, be applied in equity to the satisfaction of the complainant’s judgment. It would be the ordinary case of a creditor pursuing the choses in action of his debtor, in equity, where no means of satisfaction could be found at law. ' This would be according to the common practice in equity, 4 Johns. Ch. 687, and to our own statutory provisions. The application of this principle disposes of the rights of all the parties to this case except those of Huston. Hoffman holds the legal title, as trustee for him who may establish his right to it. H. Coonrod holds what interest he has in the land liable to satisfy any just claim against U. Coonrod’s estate. Carlisle would be compelled to give up his interest to satisfy the complainant’s judgments against him. Consequently, as between the par *168 ties, the complainant should be aided to enforce Carlisle’s rights against the estate of Coonrod.
But Huston claims by purchase. He procured from H. Coonrod a transfer of his interest, March 22, 1827. He has obtained the legal title by a decree against Hoffman, and he holds the interest of Carlisle in the judgment against U. Coonrod, under an assignment by Carlisle to Biehard Douglass, June 1, 1827, and by E. Douglass to him, December 30, 1828. If these assignments are valid, they must prevail against the complainant. They are elder than the attaching of his equity, which commenced with filing his bill in 1831. It is well settled that, in such cases as this, the earliest equity must be preferred.
It is insisted that the purchases, by Huston, of his interest in the land from H. Coonrod, and of the judgments from E. Douglass, are both fraudulent. Admit it were so, the complainant’s case would not be aided, unless it is also made out that the purchase of the judgment from Carlisle, by E. Douglass, in 1827, was fraudulent. If that purchase was bona fide, it presents an insurmountable bar to the complainant’s recovery. It transferred all Carlisle’s 164] interest to E. Douglass, so that nothing remained *in Car-lisle to be secured when the bill was filed. The assignment to Douglass must be shown to have been fraudulent and void before the rights of his assignee can be affected.
There is no evidence, among the proofs of the case, conducing to the conclusion that the purchase of E. Douglass from Carlisle, in 1827, is tinctured with fraud. The right of Carlisle to use the judgment for any beneficial purpose was very obscure, at the best) and certainly involved in litigation. His pecuniary affairs were hopelessly decayed, so that it could be of little moment to him which of his creditors possessed himself of this remnant of doubtful property. It is reasonable to suppose that E. Douglass, in such circumstances, made the purchase with an eye to his ,own profit, and without reference to Carlisle’s creditors, or design of defrauding them. We can not justly ascribe to him any other motive than that of making a good bargain out of an harassed debtor. We can impute no other design without proof, and against the express denial of all fraud in Carlisle’s answer. In this view of the case, Carlisle had no interest in the subject when the bill was filed; it must, therefore, be dismissed.