## Estill *vs* Rodes *et al.*

ERROR TO THE MADISON CIRCUIT.

*Choses in action.    Judgment creditors.    Usury.*

JUDGE MARSHALL delivered the Opinion of the Court.

*"Choses in action" in the statute subjecting choses in action and equitable interests to the satisfaction of judgment creditors, does not embrace all rights of action.*

ESTILL, a judgment creditor of Rodes, having sued out execution on his judgment, on which the sheriff made a return of "no property found," &c. filed this bill against Rodes, Miller, and Bronson, alleging that Rodes had paid to each of the other defendants large sums of money as usurious interest, upon moneys borrowed by him from them respectively, and prays that the money so paid for

usury may be decreed to be paid to him in satisfaction of his judgment, to which, as he says, Rodes assents.

Rodes, however, in his answer admitting that he has paid extra interest to his co-defendants, says it was paid by his agreement and consent, and it is not his desire that they should be compelled to refund it, and further that he does not desire or consent that said extra interest, or any portion of it, shall be appropriated to the payment of the complainant's claim.

The other defendants resisted the claim, as well by denying that they had received usurious interest as on other grounds; and, on hearing, the Circuit Court dismissed the bill.

Understanding the defendant, Rodes, by his answer, to refuse his assent to the reclamation of any usury which he may have paid to his co-defendants, the only question which we deem it necesssary to state or decide, is, whether without or against his assent, such reclamation can be made under our attachment laws by a judgment creditor having an execution returned as above stated? Or, in other words, can the Chancellor, on the prayer of such a creditor, compel the debtor to reclaim usury which he has voluntarily paid and does not desire to reclaim?

This question must be determined by a proper construction of the 37th section of the general execution law, (*Stat. Law,* 304–5,) and an examination of the nature of the right which the creditor in this case seeks to enforce in the name but against the consent of his debtor.

The statute authorizes the Court of Chancery, in the cases provided for, " to subject to the satisfaction of the "judgment any choses in action belonging to the debtor, " and also any equitable or legal interest in any estate, "real, personal, or mixed, belonging " to him. The latter clause of the sentence quoted, obviously refers to a class of subjects different from those which were intended to be designated under the head of *choses* in action, and may be presumed to be applicable to all interests in visible property, real, personal or mixed. It was, in effect, decided in the case of *Breckinridge* vs *Churchill,* 3 *J. J. Marsh.* that the right of reclaiming usury paid, was not embraced under this class of interests, when the

Court determined that this right did not pass by a mortgage transferring all the estate of the mortgagor. And the question which has been made in argument is, whether it is embraced under the denomination of *choses* in action, and if so, whether, as that term as used in the statute was not intended to apply to every right of action which the debtor might have, this particular right is to be regarded as one which is embraced by it.

The phrase, "choses in action," is obviously not used as synonimous with 'causes of action,' or 'rights of action;' for, in that sense, it would embrace rights of action for all *torts* to the person and property of the debtor, which, as we presume, has never been contended for. It is not necessary, however, for us now to decide what causes of action, arising in *tort*, if any, are embraced by the statute. Nor shall we attempt either a definition or enumeration of the various rights and interests in contracts, or relating thereto, which may constitute the *choses,* or things, in action, which the statute intends, through the agency of the Chancellor, to subject to the payment of debts. We deem it sufficient to say, that while it unquestionably subjects every unconditional interest which the debtor has in subsisting contracts, express or implied, and perhaps such conditional interests as are dependent upon precedent acts, which he or others are compellable to perform, we are satisfied that it does not embrace his right to make or originate a contract, express or implied, nor his right to make or originate any cause of action by doing any act which he had a perfect right to do, or not to do, at his election, though by the doing of it he might impose an obligation upon another, which when it should arise would be a chose in action, valuable to his creditors, and within the power of the Chancellor, under the statute.

The debtor is doubtless bound to a reasonable exertion of his faculties and his rights for the benefit of his creditors. But it is not in respect to this duty that the statute places him under the control of the Chancellor, in giving the power to subject his *choses* in action to the payment of his debts. Things to which, although they lie in action, the debtor has a right independently of his

disposition to assert it or not, are undoubtedly within the statute. But things, the right to which, lie not only in action, but in an election to be made before the right to the thing or to an action for it commences, and as to which the debtor has a perfect right, but for the intervention of the Chancellor, to elect one way or the other, are not in our opinion choses in action until, by the election of the debtor, they become so. And as the right of election, here supposed, is certainly not itself a chose in action, we think the Chancellor has no right under the statute to control it. What might be done in a case of fraud, and upon the ground of fraud, we do not feel called upon now to say, but proceed to enquire into the nature and condition of the right which Rodes had to reclaim the usury paid by him to his co-defendants.

Is the right to reclaim usury, voluntarily and understandingly paid, an absolute right existing independently of the will of the payor to make the reclamation, or is it a right which only exists in virtue of his right to avoid the payment, and as a consequence of such avoidance, is the payment *ipso facto* void, or is it voidable only? We state, and shall consider this question only as it applies to a case in which, as in the present instance, the borrower has paid the principal and legal interest and the usury. For, until full payment of the just debt, payments in the name of usury cannot be reclaimed.

The payment then, being made voluntarily, without mistake or fraud, and upon a consideration which, though not good in law, must be regarded as valuable, we do not perceive on what ground of reason or of law it can be said that such payment is void, or that the simple fact of paying and receiving the usury imposes upon the usurer the immediate and absolute duty of repaying it, and that, from the moment of receiving it, he holds for the use of the payor. The original contract, so far as it was usurious, was indeed prohibited by statute. But this prohibition being made for the benefit of the particular individual who promised the usury, might be renounced by him, as was said in the case of *Littell* vs *Hord, Hardin's Rep.* 81–2, and in the case of *Campbell* vs *Johnson,* 4 *Dana,* 182. And as he does renounce it by voluntarily paying

the usury which he had promised, and the statute does not provide for his recovering it back, it is surely going far enough to say that he shall not be concluded by that act, but may still go behind it if he chooses to do so; and that because he might have refused to pay the usury, on the ground of its being illegal to demand and receive it, he may afterwards, at his election, avoid the payment, and reclaim the usury.

To effectuate this right, the law in modern times implies a corresponding assumpsit on the part of the usurer. But as the right is only a right at the election of the payor to regard the payment as void, or make it so, and on that ground to reclaim the usury, so the liability or assumpsit on the other side must depend upon the same election, and arise in consequence of it. Though, as the election, when manifested, should be understood as referring back to the time when the right to make it commenced, so the assumpsit, when it arises, should also be considered as going back, by relation, to the same time.

It was denied, in the case of *Tompkins* vs *Barnet*, as reported by *Salkeld*, 1st *vol.* 22, that an action of assumpsit could be maintained to recover back usury paid, because, as it was said, the party who paid it was *particeps criminis*, and moreover, having paid it voluntarily, he was held subject to the rule "*volenti non fit injuria.*" But the right of reclamation having become established in equity, (*Bosanquet* vs *Dashwood*, cases *Temp. Talbot*, 38, &c.,) the action of *assumpsit* has since been held to be sustainable for its recovery in *Astley* vs *Reynolds*, 2 *Strange*, 915, and other cases. In the case just cited, however, and this is the leading case at law, the money was not paid in execution of a contract originally usurious, but was extorted from the plaintiff. who came to redeem plate which he had pawned to the defendant for £20, but which the defendant would not surrender without £10 as interest, when the legal interest was only about £3. The court regarded it as, in effect, a payment on compulsion, to which the maxim *volenti non fit inju-ria* was inapplicable. And by the same view of the case, the other objection stated in *Tompkins* vs *Barnet*, that

the plaintiff was *particeps criminis*, though not noticed by the Court, in *Astley* vs *Reynolds*, is, in effect, removed. In the case of *Smith* vs *Bromley*, (*Douglass*, 696, in a note,) Lord Mansfield, in remarking on the case of *Tompkins* vs *Barnet*, stated both of these objections to a recovery as absurd, and entirely inapplicable to a case of usury paid. And, in doing so, he plainly goes upon the ground that the payment of usury is an act of necessity, produced by oppression or extortion, practised upon the necessitous borrower, so that he cannot be said to have paid willingly. And with regard to the other objection, he lays down the distinction, now well established, that, "if the act is in itself immoral, or a violation of the general laws of public policy, then the party paying cannot have this action, for where both parties are equally criminal against such general laws, the rule is, *potior est conditio defendentis*. But there are other laws which are calculated for the protection of the subject against oppression, extortion, deceit, &c. If such laws are violated, and the defendant takes advantage of the plaintiff's condition or situation, then the defendant shall recover."

In the case of *Littell* vs *Hord*, *Hardin*, 82, it is said by this Court, (as it was afterwards, also, said in *Campbell* vs *Johnson*, 4 *Dana*, 182,) that, "the statute against usury was certainly provided to prevent the necessitous from being overreached and oppressed by those who might be unfeeling and unjust enough to take advantage of their situation," &c. And in *Chitty on Contracts*, (old edition, page 192,) the right of recovering usury paid, is placed upon the ground of its being "obtained by oppression and by taking advantage of the distress of others, in violation of laws made for their protection," the parties in such cases not being *in pari delicto*.

Such is undoubtedly the object and spirit of the statute against usury, and such the foundation of the right of reclamation of usury paid. But it is known that, in many cases in which money is borrowed on usury, it is not borrowed under the pressure of necessity or distress, but for the sake of gain, and in the indulgence of a spirit of enterprise and speculation; and, in many cases, a profit is realized upon the sum total of principal and in-

terest, legal and illegal. Could such cases be individually considered, they surely would not be regarded as coming within the spirit and object of the statute. And although, where usury has been in fact paid, a court should not make any discrimination as to the right of recovery founded on the circumstances of individual cases, but should acknowledge and enforce the right when asserted even in cases not coming within the spirit of the statute, because the statute embraces in its letter all usurious contracts, and because to discriminate might endanger the effectuation of its real object; still, there seems to be a propriety and just consistency in allowing the borrower himself, for whose protection the statute was made, to make the discrimination himself, and to abide by his judgment and election on the subject.

Even in the case of an executory usurious contract, which is expressly denounced as illegal and void, it has been said that, though the usury appear on the face of the declaration by which it is attempted to enforce the contract, it will not be the ground of sustaining a demurrer, but must be specially pleaded. This dictum is probably not sustainable. But we suppose it may be true, that though the usury appear on the face of the declaration, a judgment would not be refused to the plaintiff unless special objection be made on that ground.

But be this as it may, there seems to be a clear distinction between an executed and an executory contract, in regard to the right of the party to resist the execution of it in the first case, and to rescind what he has voluntarily and understandingly done in the other. And in the cases of *Littell* vs *Hord*, and *Campbell* vs *Johnson,* in each of which the obligor of a note pleaded to an action brought against him by the assignee, that the assignment was made upon a usurious consideration, the Court decided that the obligor had no right to take advantage of usury between the assignor and assignee, and that the right of renouncing the benefit of the statute belonged to the party for whose benefit it was made, from which it might be inferred that the right of avoiding or affirming the assignment belonged to the assignee. And in the first of these cases the Court goes on to say, that to allow

the plea would, in effect, "be compelling the assignor, who is not a party in the cause, to take advantage of a transaction which, were he in Court, he might refuse to do, and on the contrary might expressly sanction." Thus plainly showing that the transaction was not only not absolutely void, but that it might be affirmed by the injured party even in the face of a Court of Justice. And so we think in the present case. For it was not illegal in Rodes to pay the money which he had promised. And even as to the recovery of it, there is not in our statute, as there is in that of England, a penalty imposed for taking usury; and the fact of there being such a penalty, is referred to as material in some of the cases.

But without further discussion of the subject, we are of opinion that the right of Rodes, arising out of his payments of usurious interest, was a right at his election to avail himself of the illegality of the original contract and to make void the usurious payment, or the consideration therefor, and by this election to entitle himself to recover back the usury paid. And although he might, at any time within five years, maintain his bill in equity, or action of assumpsit, to recover it, without any distinct proof of an act or manifestation of his election before the commencement of his suit, this does not prove that his right of suit exists independently of his election to reclaim the usury, but is allowed because the fact itself of bringing the suit necessarily and conclusively implies such previous election; and the suit itself is a sufficient notice or demand.

The right to recover money paid as usury depends on, and is preceded by, the *election* of the party to reclaim it; until which *election*, it does not become a chose in action within the statute.

If Rodes had manifested his election to reclaim the usury by commencing a suit, or perhaps by making an actual demand of it, or by assigning specifically his right to the complainants, or by expressly, or impliedly, assenting to its recovery in this suit, (see *Brechinridge* vs *Churchill*, 3 *J. J. Marsh.*) or in any other manner, the Chancellor might, and should have decreed its payment.

The statute does not *substitute* the creditor to the debtor's right to make this *election*, and the Chancellor cannot control it, in a fair transaction.

But the statute does not substitute the creditor to his debtor's right of electing to recover money voluntarily paid on a usurious contract. And as it does not appear, either by proof or allegation, that there was any fraud against other creditors, either in making the original

usurious contract, or in making the payments under them, we cannot say that Rodes was under any obligation, either legal or equitable, to reclaim for the benefit either of himself or his creditors, the usurious payments which he had made to his co-defendants. We are of opinion therefore, that the Chancellor had no right, on any ground, to control his election, or against his assent, to assert this right of reclamation.

This opinion, as already intimated, is confined to the case of payments made beyond the amount of principal and legal interest.

The Circuit Court having dismissed the bill, the decree is affirmed.

*Owsley* for plaintiff: *Turner* for defendant.

