LORING (SEAMANS v.).   See Case No. 12,583.

LORING (SOMBOY v.).   See Case No. 13,168.

LORING (TATHAM v.).   See Case No. 13,763.

LORIO (BRAGG v.).   See Case No. 1,800.

---

## Case No. 8,516.

### LORMAN et al. v. CLARKE.

[2 McLean, 568.] [1]

Circuit Court, D. Michigan.   Oct. Term, 1841.

COURTS — DERIVATION OF POWER IN FEDERAL COURTS—PROCEDURE—LEX LOCI—NEW RIGHT —BILL FOR DISCOVERY—STATE STATUTE.

1. The circuit courts of the United States derive their jurisdiction as well in chancery as at law, from the constitution and laws of the Union.

[Cited in Re Barry, 42 Fed. 121, 136 U. S. 608, note.]

2. The laws and usages of a state, which, at law, constitute a mode of procedure in the circuit courts, derive their force from their adoption by congress.

3. A state can not enlarge nor restrict the jurisdiction of the courts of the United States.

[Cited in Rich v. Bray, 37 Fed. 275.]

4. In those states where no courts having chancery powers ex the chancery powers of the circuit courts are the same as in the other states. But the contract, or right, is governed by the local law, where it originated, and was to be performed. This law, then, constitutes the law of the contract, and will be enforced by the courts of the United States.

[Cited in Ex parte McNiel, 13 Wall. (80 U. S.) 243.]

5. It does not give a capacity to these courts to exercise jurisdiction, but it fixes the rights of the litigant parties. The jurisdiction is derived from the laws of the Union.

6. There is no principle of the common law which pervades the Union, and exists independently of the laws of the states. This rule is

[1] [Reported by Hon. John McLean, Circuit Justice.]

found as adopted and modified by the laws and judicial decisions of the respective states.

[Cited in United States v. Garlinghouse, Case No. 15,189.]

7. If a local law, or usage, originate a new right, it may be enforced by the courts of the United States, sitting within the state, by the exercise of a common law or chancery power, as the case may require.

[Cited in Clark v. Sohier, Case No. 2,835; Buford v. Holley, 28 Fed. 684; Griswold v. Bragg, 48 Fed. 520.]

8. The law of this state, which authorizes a judgment creditor, after return of execution, no property found, to file his bill for a discovery, and subject the choses in action, and equitable credits of the defendant, to the payment of this judgment, may be enforced by an exercise of the chancery powers of the circuit court.

[Cited in Holmes v. O. & C. Ry. Co., 5 Fed. 84; Mann v. Appel, 31 Fed. 383.]

[Distinguished in Shaw v. Aveline, 5 Ind. 385.]

9. The law may be considered as creating a new right which can only be enforced in chancery.

10. There being no adequate remedy, under the statute, at law, this court will give relief in equity.

[Cited in Singer Manuf'g Co. v. Yarger, 12 Fed. 488.]

[See Baker v. Biddle, Case No. 764.]

11. This is no enlargement of the jurisdictional powers of this court. It is the application of its ordinary powers to the enforcement of a new right.

12. The remedy under the statute is clear.

In equity.

OPINION OF THE COURT. The complainants set out in their bill that they obtained a judgment at law, against the defendant, for —— dollars, and having issued an execution against his property, it was returned that he had no property real or personal. And the bill states that the defendant has equitable interests, choses in action, and other property, which the complainants are not able to discover and reach by execution at law. That he has money and personal property, either in possession, or held in trust, and has equitable interests in real estate, the particulars of which are unknown; and the complainants pray a discovery and relief in the premises. The defendant demurs to 'so much of said bill as seeks discovery and relief, touching the equitable rights and interests of the defendant, or any other part of the bill which seeks a satisfaction of the judgment, out of any other property than that which is subject to execution. This proceeding is attempted to be sustained by the complainants on two grounds: First: Under the statutes of this state. Second: On general chancery principles.

The 25th section of the act of Michigan, in relation to a court of chancery (Rev. St. 365), provides, "that whenever an execution, against the property of the defendant, shall have been issued on a judgment at law, and shall have been returned unsatisfied in whole

or in part, the party suing out such execution may file a bill in chancery against such defendant, and any other person, to compel the discovery of property, or things in action due to him, or held in trust for him, and to prevent the transfer of any such property, money, or things in action, or the payment, or delivery thereof, to the defendant, except when such trust has been created by, or the fund so held in trust has proceeded from, some person other than the defendant." And power is given to the court to compel such discovery, prevent such transfer, and to decree satisfaction of the sum remaining due on the judgment, out of any personal property, money, or things in action, belonging to the defendant, or held in trust for him. There are other statutes of the state which may have some bearing on the remedy thus provided, but it is not necessary, in deciding this case, to refer to them. That, under the above statute, the courts of the state, exercising chancery powers, may give the relief sought in this bill, on the facts stated, is admitted. But it is insisted that this court, deriving its jurisdiction under the constitution of the United States and the acts of congress, have no power to act in the case. That it is not in the power of a state legislature to restrict, or enlarge, or, in any manner, to modify the equitable jurisdiction of the federal court. And a great number of authorities are cited from the decisions of the supreme and circuit courts of the United States to establish this point. Without a particular reference to these authorities it may be admitted, in the broadest sense, that the equitable powers of this court are derived from the federal government. The second section of the third article of the constitution, declares, "that the judicial power shall extend to all cases, in law and equity, arising under this constitution, the laws of the United States," &c. And it is well observed by Mr. Justice Story, that "the uniform interpretation of the above clause in the constitution has been, that by cases in equity are meant cases which in the jurisprudence of England are so called, as contradistinguished from cases at common law. So that in the courts of the United States equity jurisprudence embraced the same matters of jurisdiction and modes of remedy as exist in England." 1 Story, Comm. 64, 65. The act of congress of 1792 [1 Stat. 275] declares, "that the modes of proceeding in suits of equity shall be according to the principles, rules, and usages, which belong to courts of equity, as contradistinguished from courts of law, except so far as may have been provided for by the act to establish the judicial courts of the United States." The 11th section of the act of 1789 [1 Stat. 78] gives to the circuit courts jurisdiction of all suits of a civil nature, at common law or equity, where the sum exceeds five hundred dollars. In some of the states there is no court of chancery, but this does not affect the exercise of a chancery jurisdiction by the federal court in such states. This jurisdiction extends alike to all the states. And it gives relief, where plain and adequate redress can not be had at law, agreeably to the well established rule in the English chancery. If a state were to authorize a chancery jurisdiction by her own courts, in all controversies concurrently with a court at law, this would not enlarge the jurisdiction of the federal court of chancery. It could only interpose its remedial powers where the remedy was inadequate at law. The rules of practice of the high court of chancery, in England, have been adopted by the supreme court, and are obligatory upon the circuit courts. They have power, however, to adopt other rules not inconsistent with the general rules.

It is argued that, in the exercise of the powers thus given and defined, we must look to the settled principles of an equitable jurisdiction in England; and that no relief can here be given which could not be given in that country. And that what a federal court of chancery may do in one state it may do in another. That its jurisdiction not being derived from the laws of a state, its powers are in no respect influenced by such laws. That if a different rule were to prevail the court would lose the national character which was intended to be given to it, by its organization under the laws of the Union. The judiciary of the United States constitutes a co-ordinate and independent branch of the government; and its powers are co-extensive with the laws. It was designed, undoubtedly, to secure a uniform construction and enforcement of the laws of the Union. And in this respect, in all the states, the rule of decision is unvaried. But the federal court has jurisdiction between citizens of different states, as well as in cases arising under the laws of the United States. And where controversies are brought before it, which do not arise under the laws of the Union, by what law are they to be determined. The law of the contract is the law of the place where it was made and was to be executed. There is no unwritten or common law of the Union. This rule of action is found in the different states, as it may have been adopted and modified by legislation, and a course of judicial decisions. The rule of decision, then, must be found in the local law written or unwritten. No foreign principle attaches to the federal court when exercising its powers within a state. It gives effect to the local law, under which the contract was made, or by virtue of which the right is asserted. And this independently of any act of congress adopting the modes of proceedings, at common law, of the state courts. And the principle applies as well to proceedings in chancery as at law.

The term "jurisdiction" is often used, not very appropriately, more in reference to the subject matter of the contract, or right set up, than to the capacity of the court. The

capacity of the federal court, for the exercise of chancery powers, is received from the laws of the Union. It is not dependent for this, in any degree, on the local law. But these powers are exercised in all cases where the contract or right comes appropriately under them. If a right exist within a state which can not be enforced at law, and which properly belongs to a chancery jurisdiction, there can be no doubt that relief may be given by the federal court. And it is immaterial whether a similar right has come under the action of a court of chancery in this country or in England. The right may be new. It may originate under a local statute or usage, and exist no where else. But this constitutes no objection to its enforcement. The inquiry is, is there no adequate relief at law, and does the right come within the powers of a court of chancery. Now, can it be said that, in a case like this, the jurisdiction of the court is derived from the local law. As in all other cases, which do not arise under the laws of the Union, the local law governs the contract or right, but the power to act on it is derived from the laws of the Union.

The circuit courts of the United States have a general common law jurisdiction in a state. Their powers of common law and chancery are alike derived from the laws of the Union. For the laws of a state, and the modes of proceeding of its courts, which form a rule for the federal court, at law, in the exercise of its jurisdiction, are in force, only, by reason of their adoption by act of congress. Now, to the exercise of this common law jurisdiction, can it be objected, that the right set up in the declaration is new, and has never before been asserted? Is not the proper inquiry, whether the right be a legal one; and, if it is, the action may be sustained? And if, in such a case, the plaintiff shall fail to establish his right by proof, is the failure attributable to a want of jurisdiction in the court? The jurisdiction to afford an ample remedy, at common law, is clear, but the case for the action of the court must be made out by the evidence. The subject matter, then, on which the court acts, is altogether distinct from its jurisdictional powers. The one is the contract, the other the powers by which it is enforced. The contract originates under, and is governed by, the local law; the jurisdiction is derived from the laws of the Union. And this view is applicable as well to the chancery as to the common law powers of the circuit court. A reference to the decisions of the supreme and circuit courts of the United States will show that this has been the settled course of action.

In the state of Kentucky land titles were generally acquired by the location of a warrant on a tract of land, giving a specific description of the beginning corner of the survey, and describing the boundaries. This was called an entry of the land, but it was indispensible to the validity of the entry that it should call for some object generally known in the nearest settlement. And if such object was not called for, the holder of a warrant could, subsequently, enter the same land, though he had full notice of the prior location. The well established doctrine of notice, in fact, was discarded, and the call in the entry, for an object generally known, was substituted for it. This was an innovation upon the principles of equity, but by the practice of the courts of Kentucky it was established as a rule of property. This system was sui generis. It was an artificial superstructure reared chiefly by judicial action. New principles and modes belonged to it. It had no foundation in the jurisprudence of England. And yet this system was regarded, by the courts of the United States, as the local law of property. And as the courts of Kentucky considered an entry as an equitable title, and gave relief to the claimant against an elder patent on a junior entry, for the same land, the courts of the Union adopted the exercise of their equitable powers to the attainment of the same end. In the case of Bodley v. Taylor, 5 Cranch [9 U. S.] 191, Mr. Chief Justice Marshall says it has been sufficiently shown that the practice of resorting to a court of chancery, in order to set up an equitable against the legal title, received, in its origin, the sanction of the court of appeals, while Kentucky remained a part of Virginia; and has been so confirmed by an uninterrupted series of decisions as to be incorporated into their system, and to be taken into view in the consideration of every title to lands in that country. Such a principle can not now be shaken. And, he remarks, the jurisdiction exercised by a court of chancery is not granted by statute; it is assumed by itself. And what can justify that assumption but the opinion, that cases of this description come within the sphere of its general action. In all cases in which a court of equity takes jurisdiction, it will exercise that jurisdiction upon its own principles. The court, therefore, he says, will entertain jurisdiction of the cause, but will exercise that jurisdiction in conformity with the settled principles of a court of chancery. In Tennessee land titles were acquired by entry as in Kentucky, but in the former state the elder entry is regarded, when connected with a junior patent, as constituting a part of the legal title. So that in one of these states relief is given in equity, and in the other at law, on substantially the same facts. And such is the action of the federal courts in those states. This forcibly illustrates the influence of the local law. In one state the right is held to be equitable, in the other legal, and it is acted on accordingly, by the respective jurisdictions. In the state of Kentucky a statute provides that, in certain cases, persons holding distinct titles may be united in the same action. And the supreme court have held, that under this statute parties may be united in a suit in chancery, who have no common interest. Lewis v. Marshall, 5 Pet. [30

U. S.] 470. In the case of Clark v. Smith. 13 Pet. [38 U. S.] 20, under the act of Kentucky of 1796, which provides, that any person having both legal title to, and possession of, land, may institute a suit against any other person setting up a claim thereto; and if the complainant shall be able to establish his title to such land, the defendant shall be decreed to release his claim thereto, &c. The court held it afforded ground for relief. They say the state legislatures have no authority to prescribe the forms and modes of proceeding in the courts of the United States; but having created a right, and, at the same time, prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the federal courts, no reason exists why it should not be pursued in the same form as in the state courts. In Ohio a statute gives to a decree, for a conveyance of title, the same effect as a deed formally executed. But, in Kentucky, the conveyance, under a decree, is required to be executed by a commissioner. appointed by the court. These statutes have, uniformly, been considered as applicable to the federal courts, and many land titles rest upon them.

More authorities might be cited, if more were necessary, to show that the courts of the United States, in the exercise of their chancery powers, will enforce equitable rights. whether they originate by contract, by local usage, or by the statutes of a state. And the principle is the same, whether such rights relate to titles for land, or not. If full and adequate relief can not be given at law, relief may be sought in chancery. It is important, and the supreme court have often said so, that, in regard to land titles, there should be but one rule of decision in a state. But the same remark may be applied, with equal force. to any rule of property. Whether the contract or right be equitable or legal, the same effect should be given to it in the federal, as in the state courts. In the case under consideration, the statute declares, in substance, that all equitable rights, however held by the judgment debtor, may be reached by the plaintiff, to satisfy the judgment, by a bill in chancery. Now, these rights can not be reached by an execution at law; and if. as the defendant's counsel contend, they are not subject to the ordinary action of a court of chancery, still, under the statute, they are proper objects of chancery jurisdiction. It is, unquestionably, in the power of a legislature to subject the personal and real estate of the judgment debtor, to the payment of his debts, in such mode as they shall prescribe. And they have, in the above statute, subjected his choses in action, and other equi-

ties. with this view, to the action of a court of chancery. Here, then, is a right given to the plaintiff—a right which a court of law can not enforce, and which the statute declares may be enforced in equity. This right, then, by the statute, is brought within the action of a court of chancery, if it was not within it before. It is, therefore. an equitable right, made so by the statute. and which the circuit court, equally with a state court, may enforce, by the exercise of its chancery powers.

In the language of the supreme court, in the above cited case of Clark v. Smith, the legislature having created a right, and, at the same time, prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the federal courts, no reason is perceived why it should not be pursued as in the state courts. This authority covers the whole ground. Had the question, now under consideration, been before the supreme court, language more appropriate to its decision could not have been used. The right was created, and declared to be an equitable one. A court of chancery can act upon such right, in accordance with established principles, and the modes peculiar to its organization. But the supreme court say, even the forms of proceeding authorized by the statute. may be followed by the federal court, if not inconsistent with the rules of chancery. It is the characteristic of a court of equity to regard substance more than form. Having jurisdiction of a subject matter, in the language of the late Chief Justice Marshall, it will exercise it upon its own principles. We think the present bill is clearly sustainable under the statute, which gives to the complainant the discovery and the relief prayed for in his bill. And we are also of the opinion. that the bill is sustainable on the general principles of equity, independently of the statute. It would, indeed, be a reproach to the administration of justice, if a debtor, by converting his estate into choses in action or stocks, or, if his estate consisted of such property as can not be reached by an execution, he should be able to hold it in defiance of his creditors. At common law, an equitable estate can not be sold on execution; but who ever doubted that it might be sold, by a decree in chancery? And, in the case of Vanness v. Hyatt, 13 Pet. [38 U. S.] 300, the supreme court say, that an equitable interest in personal property is governed by the same rule. Being satisfied on the first ground, it is unnecessary to examine this one. It would not be difficult to show that both on principle and authority, the second ground is sustainable. The demurrer must be overruled.