Nov. Term,
1854.

Shaw
v.
Aveline.

---

SHAW *v.* AVELINE.

A bill in equity will not lie by a judgment-creditor to subject a chose in action of the debtor to the payment of his judgment.

Friday,
December 1.

ERROR to the *Miami* Circuit Court.

STUART, J.— *Shaw* filed his bill in chancery against *Aveline*, alleging a judgment at law, execution, and return

of *nulla bona*. It was further alleged that *Aveline* had a judgment at law in the same Court against a *Miami Indian*. The prayer of the bill, among other things, is, that *Aveline* be compelled to assign his judgment to *Shaw*, and that *Aveline's* judgment-debtor, the *Indian*, who is also made a party to the bill, be required to pay the amount of that judgment to *Shaw*, to be applied on the judgment against *Aveline*.

In brief, it is a bill in equity by a judgment-creditor seeking to subject a chose in action.

At the *March* term, 1851, the defendants moved to dismiss the bill for want of equity; and the Court sustained the motion. *Shaw* prosecutes error.

There is no appearance and no brief in behalf of *Aveline*.

In support of the bill, *Shaw* cites several authorities, which will be noticed in their order, so far as they seem to bear on the question presented for decision.

The case of *Kipper* v. *Glancey*, 2 Blackf. 356, is one of those referred to. But it seems to fall far short of the doctrine contended for by *Shaw*. There it is decided that the debtor's absence from the state enables the creditor to reach his equitable interest in real estate by a proceeding in chancery. The absence of the debtor beyond the jurisdiction, is, like his death, an exception to the rule that the creditor must have a judgment at law before he is entitled to equitable aid. But *Aveline* was both alive and present in Court, demurring to the bill. So that the doctrine necessarily assumed by *Shaw* is not, either as to the party or the subject, supported by this reference.

The case of *Hendricks* v. *Robinson*, 2 J. C. R. 283, is also referred to. There the Court intimates that equity will lend its aid to an execution-plaintiff in certain contingencies. But it is done in such guarded and qualified terms, as makes it wholly inapplicable to the present case. It is when third persons are in possession of the debtor's property, screening it from execution—property, too, which the creditor's vigilance at law had already bound by an execution-lien—that equity will interfere to remove embarrassments. This language implies, and such was the fact

*Nov. Term,
1854.*

SHAW
*v.*
AVELINE.

in that case, that the chancellor was speaking of personal property. So that when analyzed, it will not bear any construction favorable to *Shaw's* position. For *Shaw* is not seeking to disembarrass property on which he has already a lien; but to subject a chose in action which at law is not leviable. .

*Wiggins* v. *Armstrong*, 2 J. C. R. 144, which *Shaw* also cites, is, in its analogies, strongly against his position. It denies to the creditor, before judgment at law, the aid of a Court of equity to enjoin the debtor from fraudulently disposing of his property. Yet surely that state of facts appeals quite as strongly to equitable principles as the case at bar.

*Williams* v. *Brown*, 4 J. C. R. 682, referred to in argument, has no analogy to the present case; and does not furnish even a *dictum* in support of the position assumed. The same may be said also of *Brinckerhoff* v. *Brown, id.* 671, which is likewise relied upon in argument.

The case of *Egberts* v. *Pemberton*, 7 J. C. R. 208, when closely considered, is not entitled to any weight as an authority on this question. It is not an adjudication on the point in controversy, but simply the suggestions of the chancellor in granting a temporary injunction. The bill in that case contains a series of facts very similar to those set up by *Shaw*. Thus prepared, the bill is presented by counsel; and they move for an injunction to prevent *Pemberton* from assigning, among other debts, a certain judgment, and that the judgment-debtor be enjoined from paying, &c. In granting the injunction, *Kent*, chancellor, suggests many weighty considerations why on principle the law should be so—why Courts of equity should interfere to attach judg-. ments, &c.; and concludes thus: "that he should therefore, though with considerable doubt and hesitation, allow the injunction with respect to the judgment-debts due to *Pemberton*, with a view to have the question further and more fully discussed."

Had the doctrine contended for been settled by authority, so learned a judge as chancellor *Kent* would not have been in doubt about it. And had it been a new question, untram-

meled by authority either way, he would not have hesitated to apply a doctrine which coincided with his own convictions of what, on equitable principles, the law should be. The very doubt and hesitancy of such a jurist is itself almost conclusive against the doctrine as a question of authority.

Long prior to the *Pemberton* case, the same learned judge had given this point great consideration. In *Bayard* v. *Hoffman*, 4 J. C. R. 450, stepping aside from the case made in the record, he elaborately examines the jurisdiction of the *English* chancery Courts over choses in action. He shows conclusively that such jurisdiction, assumed by *Hardwicke* and others, was denied and overthrown by *Thurlow* and *Eldon;* concluding that "the better reason is with the earlier authorities." So that when he granted the injunction in the *Pemberton* case, with so much doubt and hesitancy, the question was not new to him. It was on the authority of lord *Eldon* that he doubted. He admits that in the case then before him, *Bayard* v. *Hoffman*, the question was not presented; and accordingly he decides it on its own merits, on an entirely different point.

This learned opinion, however suggestive to a legislative body, is of little value as a judicial authority, save to show that its author leaned to the earlier decisions, which he admits had been overruled.

*Hadden* v. *Spader*, 20 J. R. 554, decided in the Court of Errors, is often quoted in favor of equity jurisdiction over choses in action. But it will not bear analysis. That, too, is another instance of judicial disquisition outside of the case before the Court. The facts made out a case of fraud in the transfer of property. Viewing it in that light, the chancellor had disposed of it in a few words in 5 J. C. R. 280. But in the Court of Errors, *Woodworth*, justice, reproduces in *November*, 1822, the same authorities and arguments adduced in *Bayard* v. *Hoffman, supra*, in *June*, 1820. A separate opinion is, however, delivered by *Platt*, justice, in which he places the decision on its true basis. Speaking of chancery jurisdiction in aid of executions at law, he says: "I am not prepared to extend this doctrine to any other

cases than those wherein the trustee received goods liable in themselves to execution, under circumstances which imply fraud in fact or in law as against creditors. In an abstract view, it may appear proper to extend the remedy in favor of creditors to every chose in action of the debtor. But such power has not been conferred on the Courts; and it will be the appropriate office of legislative provision to afford such a remedy."

From all these authorities, it is clear that the jurisdiction to subject choses in action does not exist at common law. At one time it was held in *England*, that equity had such power; but it was denied and wholly overthrown in the times of *Thurlow* and *Eldon*. Such is also the prevailing *American* doctrine. Many of the states have, therefore, interposed by statute, giving various degrees of relief under what is sometimes denominated a creditor's bill. In *Ohio* and *Kentucky*, the jurisdiction of Courts of chancery over choses in action is denied, save only to the extent to which such jurisdiction has been conferred by statute. *Gilmore* v. *The Miami Bank et al.*, 3 Ohio 502.—*Douglass* v. *Huston*, 6 Ohio 156.— *Cadwallader* v. *The Granville Alexandrian Society*, 11 Ohio 292.—*Buford* v. *Buford*, 1 Bibb 305.—*McFerrin* v. *Jones*, 2 Litt. 219.— *Cosby* v. *Ross*, 3 J. J. Marsh. 290.—*Crozier* v. *Young*, 3 Mon. 158.—*Estill* v. *Rodes*, 1 B. Mon. 314.—*Moore* v. *Young*, 1 Dana 516.— *Doyle* v. *Sleeper*, *id.* 534. In this latter case, the Court say, that the weight of authority is opposed to the doctrine advanced in *Bayard* v. *Hoffman*, *supra;* and add, that the legislature of *Kentucky* virtually admitted the common law as denying the jurisdiction, when in 1821 the act was passed authorizing Courts of equity to subject choses in action. So, also, in *New-Jersey*. *Fuller* v. *Taylor*, 2 Halst. Chy. 301.

In *Michigan*, the chancery powers of the Courts to subject choses in action, are conferred by statute; and the complainant is held to great strictness in bringing himself within the statutory requirements. *Smith* v. *Thompson*, Walk. Ch. 1.— *Williams* v. *Hubbard*, *id.* 28.—*Beach* v. *White*, *id.* 495. Accordingly the case of *Lorman* v. *Clarke*,

2 McLean 568, referred to in argument, is a decision under the statute of *Michigan*, which is quoted in the opinion. What is added about the general principles of equity, is a deserved eulogium on the legislature, which enables the Courts to frustrate fraud. But even the opinion of so eminent a judge as to what the law should be, can not be regarded with the authority of an adjudicated case, to settle what the law is. If the case of *Van Ness* v. *Hyatt*, 13 Peters 294, goes the length claimed for it by judge *McLean*, it stands alone against the whole current of recent authorities both in *England* and the *United States*.

Whenever the power is deemed desirable, it is better that the legislature confer it, than that the Courts should assume it. It is said in *Lorman* v. *Clarke, supra*, to be a reproach to our jurisprudence, that the debtor should be able to secrete his property from execution. But if a reproach, it seems rather to be so to the legislative than the judicial department. With so many authorities staring them in the face, the assumption of such power by the Courts would be strongly questioned. Nor could the Courts easily give form to the remedy, or create limitations to guard their usurpation from abuse. But if conferred by the legislature, the extent of the jurisdiction could be carefully guarded, enlarging or limiting it as experience might suggest. Whether, for instance, it should embrace only choses in action arising *ex contractu*, or should be made to cover every cause of action a debtor might have, whether arising from contract or tort, would present considerations of policy more properly legislative than judicial.

*Per Curiam.*—The decree is affirmed with costs.

*D. D. Pratt*, for the plaintiff.