## LOUISVILLE TRUST CO. v. KENTUCKY NAT. BANK.

(Circuit Court, D. Kentucky. June 2, 1900.)

1. NATIONAL BANKS—ACTION TO RECOVER PENALTY FOR USURY—PARTIES.
    Whether an assignee for the benefit of creditors under a common-law deed of assignment is the "legal representative" of the assignor, within the meaning of Rev. St. § 5198, and as such entitled to maintain an action in his own name against a national bank to recover usury paid by his assignor, quære.

2. SAME—LIMITATIONS—ACCRUAL OF RIGHT TO ACTION.
    On a settlement between a national bank and a debtor who owed the bank some $69,000 on a number of notes, a payment was made which reduced such indebtedness to $30,000, for which a new note was given. *Held* that, both on general principles, in accordance with the presumed intention of the parties, and under Ky. St. § 2219, cl. 3, which provides that "partial payment on a debt bearing interest shall be first applied to the extinguishment of the interest then due," all past interest, whether usurious or otherwise, must be regarded as having been paid in the settlement, and that limitation commenced to run on that date against an action under Rev. St. § 5198, to recover the penalty for usury previously contracted for.

3. SAME—AMOUNT OF PENALTY—LIMITATIONS.
    Where a national bank discounts a note at a usurious rate, the maker, or his legal representative, on payment of the note, is entitled to recover as a penalty, under Rev. St. § 5198, double the amount of the discount so taken, and of all interest subsequently paid on the note or its renewals, although separate payments of interest were made from time to time after its maturity, and all at legal rates; and limitation does not begin to run against an action to recover such penalty until full payment of the note or its renewals.

This was an action by plaintiff, as assignee for the benefit of creditors of the firm of W. H. Thomas & Son, to recover the penalty imposed by the national banking act for usury paid the defendant by plaintiff's assignors.

Gibson, Marshall & Gibson and Helm, Bruce & Helm, for plaintiff.
Humphrey, Burnett & Humphrey, for defendant.

EVANS, District Judge. When this case was before the court upon a previous occasion my learned predecessor, Judge Barr, in disposing of the demurrer to the plaintiff's petition, announced, as reported in 87 Fed. 143, three propositions, in substance as follows, namely: First, that the plaintiff, as assignee under a voluntary deed of assignment for the benefit of the creditors of W. H. Thomas & Son, might, as the "legal representative" of that insolvent partnership firm, sue in its own name to recover, under section 5198 of the Revised Statutes, any usury which had been paid to the defendant by the insolvent firm before the assignment; second, that the plaintiff might. under that section, recover twice the amount of the entire interest paid, and was not limited merely to twice the amount of the excess of interest over the legal rate; and, third, that usurious interest on a note is not paid, so as to set running the statute of limitations against an action to recover it back by giving a renewal note which includes the interest, but that the statute only begins to run from the time the renewal note is paid. To the two last propositions we think there can be no valid objection, but to the first we give our consent, not because it may be entirely sound (for that is possible), but because it has been so decided in this case by my predecessor. It has been my uniform custom not to reverse any decision previously made by him in the progress of a particular case. For doing that there is an appeal to a higher tribunal. I say this because, while I might also have reached the conclusion announced by Judge Barr on the first proposition, I am not inclined to think that I should have done so. I rather believe that a "legal representative," to come within the meaning of that phrase as used in section 5198, must be a representative who is made such by law, as distinguished from the voluntary action of the parties; such, for example, as an executor, an administrator, a trustee in bankruptcy, or the like. They are representatives by the force and operation of positive law, and therefore the "legal" representatives of their constituent. And so, indeed, under the present statute of Kentucky, which, however, was not in force when the assignment was made, an assignee under a statutory assignment may be a legal representative by force of the provision making him such. Being representatives by law (otherwise "legal representatives"), all such fiduciaries as those mentioned might sue in their own names. Here, however, is the case of a plaintiff undertaking to sue in its own name, who is not a representative by any law as such, but is a mere assignee under a voluntary common-law deed of assignment of what is possibly only a mere nonnegotiable and nonassignable chose in action, if, indeed, it amounts to that. The claim sued upon is not described, nor in specific terms embraced, in the deed of assignment, and yet the assignee attempts to bring an action in its own name without joining W. H. Thomas & Son as plaintiffs upon a cause of action which did not accrue to the plaintiff, but to other persons, who, by no express provision in the deed of assignment, transferred it to the plaintiff, and which, under section

474 of the Kentucky Statutes, at least, is not assignable so as to vest the right of action in the assignee. That section, which is the only authority for assigning choses in action in this state, is in the following language:

"Sec. 474. All bonds, bills or notes for money or property shall be assignable so as to vest the right of action in the assignee; but except in case of bills of exchange, not to impair the right to any defense, discount, or offset that the defendant has and might have used against the original obligee, or any intermediate assignor, before notice of the assignment."

W. H. Thomas & Son had the option to claim and demand the penalties given for receiving usurious interest from them, or not to do so, as they pleased. They were sui juris, and capable of making the election at all times. A dead person or a bankrupt is not capable, and, if an election is made at all in such cases, it must be made by the "legal representative," and it seems to me that this is what section 5198 means. It is upon considerations like these that I am inclined to think that, if the proposition were open in this case as it comes before me, I should hold that the plaintiff was not, by force of any law, the "representative" of W. H. Thomas & Son; that we must look alone to the deed under which it claims, and not to the law, to ascertain its rights; and that, not being the "legal representative," it could not lawfully sue in its own name for the recovery sought, but must leave that to its assignors, who, of course, however, could have sued for plaintiff's benefit, or both might have joined. We think these views can be powerfully supported, in the absence of any express description or mention in the deed of assignment of the claims sued on, by the doctrine of the Kentucky court of appeals in the case of Estill v. Rodes, 1 B. Mon. 321, where it is held that a right to recover usury is not even a chose in action until the debtor has manifested his election to make the claim. There was no such election made by Thomas & Son in the deed of assignment as I think might have been done, nor by any suit or demand, nor, indeed, in any other way. But, passing this question, we come to the matters of material importance to be determined upon this hearing. Was any usurious interest "included" in the note for $30,000 executed July 8, 1893, and due 60 days thereafter; and, if so, how much? Or, if not, was there any excessive interest paid upon it, or upon any of the other notes or bills mentioned in the agreed findings of fact, after that date, and within two years of the 13th day of November, 1895, when this action was brought? On the 8th day of July, 1893, the indebtedness of W. H. Thomas & Son to the defendant upon various items of mercantile paper exceeded $69,000, and the only note for an amount which in any way approximated $30,000 was one for $24,500, which had been given in February previously in settlement of the balance then unpaid of a note for over $46,000, at which time it is probable that all previous usury and interest were paid upon it. On July 8, 1893, there appears to have been a general settlement between the defendant and Thomas & Son, with the result that over $39,000 was paid to the bank,—mostly, if not entirely, in whisky,—leaving a balance then due of $30,000. For this sum, a note was given, due at 60 days, and was discounted at that time by the bank at a usurious rate. The amount of discount retained

on this note at that time, and which included this usury, was $373.33. It was deducted from the face of the note, and Thomas & Son credited with the net proceeds.   All of the notes, probably 9 or 10 in number, and all of which bore interest, which were embraced in the settlement of July 8, 1893, were at that time marked "Paid and canceled."   After the maturity of this $30,000 note, Thomas & Son paid the interest upon it from its maturity to April 1, 1894, at the lawful rate of 6 per cent. per annum only, and on the 18th day of the same month made the deed of assignment.   On April 20, 1894, the note was paid by the plaintiff, with interest from April 1st to the date of payment at 6 per cent. only, amounting to $95.   It will be observed from the findings of fact that in no way is it ascertained, either expressly or otherwise, that there was any usury actually included in the $30,000 note; and it seems to me that it would be an unjust conclusion to assume, in the absence of direct proof or finding to that effect, that there was any.   The burden in a penal action like this is manifestly upon the plaintiff to show that there was usurious interest included in the note, whether it was a renewal of former notes or not.   There was no presumption that there was any usury included in it, and, to say the least, the agreed facts may well excite the gravest doubt of it. Such a doubt should preclude a recovery in an action of this character. Certainly, on July 8, 1893, the gross indebtedness of Thomas & Son to the bank may have included usurious interest, but it also included principal to an amount very greatly in excess of $30,000, and there is no express finding as to whether the payments then made were applied to principal or interest.   The findings in no way differentiate the payment or its application.   The Kentucky Statutes, by which alone we are to determine what is lawful and what is unlawful interest, in section 2219, cl. 3, expressly provides that "partial payment on a debt bearing interest shall be first applied to the extinguishment of the interest then due."   The word "extinguishment," as thus used, must be equivalent to the word "payment."

Beginning in 1890, there had been an active series of transactions between Thomas & Son and the defendant in which many notes had been discounted, and some large notes frequently renewed, a new discounting occurring at each renewal; but apparently in no instance was interest added to principal, though at each discounting there had been a more or less excessive rate retained from the face of the note.   There has been much contention as to whether the interest should be considered as having been "paid" at each renewal (these transactions having mostly occurred more than two years before the action was brought, and at each of which, at the time, the bank's books, as well as its account with Thomas & Son, showed that the discount was paid), or whether any part of the interest should be considered as paid until the principal itself was paid; and many authorities have been cited and examined.   The agreed findings of fact do not entirely clear up the difficulty, but, as the burden of proof was on the plaintiff, it seems to the court that the questions of law so much discussed by the respective counsel are, in the main, abstract, because the agreed facts of the case do not seem at all to show that there was any interest whatever, either usurious or other-

wise, included in the note for $30,000 given July 8, 1893. All interest, whether excessive or otherwise, which had been charged by the defendant up to the giving of that note, under the stress of the statutory provisions last referred to, must probably be considered as having been "extinguished" by the payment then made, and, if this be so, the statute of limitations as to this phase of the case began to run as of that date, which was more than two years before this action was brought. But, apart from the provision of the Kentucky statute just quoted, and whatever weight it may be entitled to, it would be difficult either to reach or to sustain any other conclusion than that it was intended, alike by the defendant and by Thomas & Son, that everything, including interest, usury, as such, and a large amount of principal, was settled at that date, except the $30,000 note then given. Thomas & Son were always in need of money. They borrowed it. They voluntarily paid the excessive interest. They manifested no election to reclaim it at the time of the settlement of July 8, 1893, and no other conclusion could be fair than that it was meant upon that occasion to extinguish every obligation of the defendant and of Thomas & Son respectively, except that of the latter to pay to the bank $30,000, as provided for in the note of that date. After the payment of $39,000, then, it would be grossly unjust to hold that there was anything but principal in the $30,000 note. So that, as there was then no pretense by Thomas & Son of any claim to insist upon usury, and as they make none now, and have never made any, either in the deed of assignment or by demand or otherwise, there does not seem to be any reason why section 5198 of the Revised Statutes should not be strictly construed as against the plaintiff, who has not, under the deed of assignment, any express right to it by special mention or description. Neither the plaintiff nor Thomas & Son paid any usurious interest on this note after its maturity. It is true that, subsequent to that event, some interest was paid by W. H. Thomas & Son as a separate transaction, and it is equally true that in another separate transaction after the maturity of the note the plaintiff paid a small amount of interest, and that in each case it was paid at the lawful rate. It is contended that the interest thus paid in separate transactions cannot be the basis of a recovery for double its amount merely because in the previous transactions usurious interest had been charged; that the payment of the usurious interest was an illegal transaction, and stood apart; and that to punish the defendant for taking lawful interest in a separate transaction was not contemplated by congress in section 5198. But the express decisions of the supreme court have closed the question. The only illegal charge, it is true, in respect to the $30,000 note made by the defendant, was in the original discount, which embraced usurious interest. Upon that illegal transaction the penalties of the statute must, of course, be visited. In the case of Brown v. Bank, 169 U. S. 416, 18 Sup. Ct. 390, 42 L. Ed. 801, and more particularly in that of McBroom v. Investment Co., 153 U. S. 318, 14 Sup. Ct. 852, 38 L. Ed. 729, the supreme court holds that double all the interest charged or chargeable on a note under like circumstances should be recovered, whether taken out more than two years before suit was

brought or not. These decisions proceed upon the idea that the person receiving the usury may, at any time before the principal of a particular note is paid, repent, and credit it in settlement upon the debt, or treat it as having been paid upon principal, or else refund it outright; and, indeed, the principal has been carried to the extent of being applied where a note which in fact included usury has been renewed. But in this case the $30,000 note did not include any usury, and was never renewed. But for the decisions referred to, it might be possible to hold that what was retained as discount on July 8, 1893, was actually paid on that date, and therefore barred, and that what was paid afterwards was lawful. But they forbid such a ruling. The case before us is not one where, the principal debt being sued for, the interest may be abated because of usury. It is an action to recover the penalty of double the interest which "has been paid" upon the ground that some of it was usurious. Barnet v. Bank, 98 U. S. 555, 25 L. Ed. 212. We must, therefore, ascertain when the interest was "paid," and whether within two years before the suit was brought. In my opinion, upon the agreed facts, no result can fairly be reached which does not find the further fact to be true that all the interest sued for, whether usury, paid as such or otherwise, except such as was retained or paid in way of discount and interest on the $30,000 note dated July 8, 1893, and such as was retained or paid on the other small notes discounted after that date, was all "paid" on or before July 8, 1893, within the meaning of section 5198, and that the right to recover it was barred by the statute when this action was begun on December 13, 1895. While the agreed facts may possibly trace usury into the $69,000 due the defendant on July 8, 1893, I do not think that the plaintiff, by proof or otherwise, has traced any of it into the note for $30,000 given for the balance then not paid, although resting under the burden of doing so in order to manifest a clear right to the extreme penalty it seeks to enforce. As already stated, there is no presumption that there was any usury included in the note, and the Kentucky statute and the action of the parties seem clearly to negative the idea. I do not think, upon all the agreed facts, that the court would be justified in reaching any conclusion except that, by the voluntary action of the parties, all claim for interest and usury as such which accrued previous to July 8, 1893, was "extinguished" by what then occurred. Certainly, after what then took place, the plaintiff, as mere assignee under the deed offered in evidence, has no claim to it, and particularly as Thomas & Son made none. If this be correct, we are now to deal only with the interest accruing after that date. Under the case of Brown v. Bank, 169 U. S. 416, 18 Sup. Ct. 390, 42 L. Ed. 801, the plaintiff (if entitled, as legal representative, to recover anything) must be adjudged double the entire interest afterwards accruing on all the notes discounted on and after July 8, 1893, because of the very small amount of usury obtained at the original discounting of each. There were various discounts by Thomas & Son of mercantile paper after July 8, 1893, upon which they paid usury; and where subsequently they paid lawful interest, as did also the plaintiff in a manner very similar to the transactions respecting the $30,-

000 note. To each of these transactions the same principles must apply as I have announced in respect to the $30,000 note. Yielding with much doubt to Judge Barr's view, I hold that the plaintiff, as legal representative of W. H. Thomas & Son, is entitled to recover double the sums indicated, but none of the various large amounts claimed for payments made previous to July 8, 1893. A judgment can be prepared accordingly.