THE FIRST NATIONAL BANK OF MEADE CENTER V.
WILLIAM T. GRIMES.

1. USURY — *Effect on Note.* A national bank which makes a loan upon
   a note that embraces usury, and is renewed from time to time, for-
   feits the entire interest stipulated to be paid, and no portion of the
   usurious interest included in the renewal note can be recovered.
2. ——— Immaterial error is not a ground of reversal.

*Error from Meade District Court.*

THE opinion states the facts.

*Ady, Peters & Nicholson,* for plaintiff in error:

1. The introduction of any evidence in regard to the sale
by one Mike O'Meara to Theo. C. Baxter of a small bay
horse, which was not one of the horses in question, and which
is not shown to have had any connection with the case, is the
first error complained of. The testimony of Theo. C. Baxter
shows that he purchased the horse from one Mike O'Meara,
for which he paid the sum of $25; but there is no evidence
in the case-made, either from Mr. Baxter or from any one
else, showing that this sale by O'Meara was made for the
bank, or as the agent of the bank, or that it had any connec-
tion with the indebtedness of William T. Grimes to the First
National Bank. The indebtedness was an indebtedness of
the bank, and the taking of the horse and selling him by one
Mike O'Meara was not such an action as would bind the
bank, unless the evidence discloses that he was acting for the
bank. The special findings made by the jury show that the
sale of this bay horse was taken into consideration by them,
because, in answer to question 8, which is, "How much money
had the plaintiff in this action paid on the note of $178.40,
secured by said mortgage, when the horses were taken under
the mortgage?" to which the jury answer, "$205.90, includ-
ing money received from sale of bay horse, in March."
The computation of the amounts paid, excluding the amount
received for the sale of this bay horse, shows that there was

still about $40 due the bank upon the note by Grimes, and if such was the case, and if the $25 which was paid to O'Meara for the sale of the bay horse should not have been charged up to the bank, then there was manifest error in the trial of the case. The record shows that the attorney for the bank in the trial of the case, at the close of the evidence given by Baxter, moved to strike out said evidence from the consideration of the jury, which motion to strike out was overruled, and exception saved. We contend that, so long as any part of the note from Grimes to the First National Bank remained unpaid to the bank, the latter had the right to take possession of the chattel property and sell the same for the purpose of satisfying the remainder of the indebtedness.

2. Again, we claim that the court erred in its instructions, because Grimes was not entitled to have the usurious interest applied in satisfaction of the principal of the debt. The evidence shows that certain money was paid as interest from time to time, and it is claimed that this interest was usurious. The case comes squarely within the decision of *Driesbach v. Bank of Wilkesbarre*, 104 U. S. 52. It is true that, under the statute in regard to national banks, section 5198, a national bank taking, reserving or charging a rate of interest greater than is allowed by section 5197 of said act, knowingly, shall be deemed a forfeiture of the entire interest, but it in no wise invalidates the original debt, and in no wise affects the original debt, and, as was held in the case referred to in 104 U. S., cannot be offset or applied to the payment of the original debt. And hence the last instruction of the court is erroneous.

No brief on file for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action of replevin for the recovery of two horses owned by W. T. Grimes. He claims to be entitled to the possession of the horses, and he avers that the First National Bank of Meade Center took possession of them without right, and is wrongfully detaining them

from him. The bank admits the taking of the horses, but contends that it was entitled to their possession under and by virtue of a chattel mortgage given to secure the payment of a note for $178.40, which on its face drew interest at 12 per cent. per annum, executed by Grimes to the bank on December 10, 1887. The claim of Grimes was, that the debt for which security was given had been fully paid, although a renewal note for a portion of the debt was still outstanding against him. He further claims that he did not receive the amount of money mentioned on the face of the note, but that the bank charged a rate largely in excess of the legal interest, and included the same in the note. Several renewal notes were made, in each of which an illegal rate of interest was charged by the bank. The verdict of the jury was in favor of Grimes, and the bank complains of the rulings of the court in the admission of testimony and in the instructions given to the jury. The testimony objected to was that in relation to another horse which was included in the mortgage in question, and which had been taken and sold by O'Meara, the president of the bank, some time before the commencement of the present action. This testimony was manifestly introduced with a view of having the amount for which the horse was sold credited upon the note given by Grimes to the bank. It is contended that the testimony was incompetent, for the reason that it was not shown that O'Meara was acting for the bank, or that the horse was taken and sold in satisfaction of the indebtedness of Grimes to the bank. It appears, however, that O'Meara acted for the bank throughout; that this horse was included in the mortgage securing the debt of Grimes to the bank; and no reason is seen why Grimes was not entitled to a credit upon his debt for the value of the horse. But a full inquiry had been made in the early part of the trial with reference to this horse without objection, and even the plaintiff in error drew out much of the testimony with reference to the taking and appropriation of the horse. No objection was made to this testimony, nor any

motion made to strike it out, and the objection which was made later in the trial was therefore immaterial.

It is next claimed that the court erred in charging the jury that—

"If you should find from the evidence in this case that the original note was renewed from time to time without making a new and separate contract, and that usurious interest was embraced in such renewal notes, then you are instructed that the mere renewal of the original note would not purge the transaction of usury, if you should in fact find that there was usury in the original note."

It is contended by plaintiff in error that Grimes was not entitled to have the usurious interest applied in satisfaction of the principal of the debt, and *Driesbach v. Bank*, 104 U. S. 52, is cited as an authority against the instruction. An examination of the terms of the instruction, however, shows that it does not violate the rule stated in the case cited. As the plaintiff in error is a national bank, it is governed by the provisions of the national banking act relating to interest and usury, and not by the statutes of the state. The bank could not charge a higher rate of interest than was allowed by the aws of the state, and § 5198, of the Revised Statutes of the United States provides that—

"The taking, receiving, reserving or charging of a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same, provided such action is commenced within two years from the time the usurious transaction occurred."

Under this provision, a national bank which knowingly stipulates for usury upon a note to be paid in the future forfeits the entire interest, and in an action upon the same can only recover the face of the note, less the interest charged or

included therein. If the interest is charged and collected in advance, the person paying it, or his legal representatives, may, in an action in the nature of debt, recover twice the amount of interest paid. This penalty must be enforced in the manner provided in the act of congress, and resort cannot be had to any other mode or form of procedure. (*National Bank v. Deering*, 91 U. S. 29; *Barnet v. National Bank*, 98 id. 555; *Driesbach v. National Bank*, supra.) The plaintiff in error relies upon the case last cited, but that case determines only that usurious interest which has been paid to a national bank upon renewal of a series of notes cannot be set off and applied in satisfaction of the principal of the note. It simply holds that the penalty provided for the taking of usury cannot diminish or affect the principal, and that the remedy for the same must be enforced as the statute prescribes. It will be noticed that the decision is carefully limited to usury that has been paid, and has no reference to usury which is embraced in either an original or renewal note. When a national bank makes a loan and stipulates in the note for usury, it can only recover the actual sum loaned, without interest. This is the position of the plaintiff in error in this case, and it is immaterial whether the usury was embraced in the original or renewal notes. In either event, the bank cannot recover the usurious interest promised to be paid and included therein. (Morse, Banks, 562, 564, 565; Ball, Banks, 194.)

The instruction referred to is the only one about which complaint is made, and in it we find no error.

The judgment of the district court will be affirmed.

All the Justices concurring.