The order is reversed, with $10 costs and the disbursements of this appeal, and the motion· to set aside the report, judgment, stipulation, and order of reference is denied, with $10 costs. All concur.

(70 App. Div. 376.)
## SMITH v. FIRST NAT. BANK OF CUBA.
(Supreme Court, Appellate Division, Fourth Department. March 11, 1902.)

LIMITATIONS—USURIOUS TRANSACTION—TIME OF OCCURRENCE.

Where one discounts at a bank his own note, or one made for his benefit, receiving the amount of its face, less discount, which includes usury, the usurious transaction does not occur till he pays the note; but where he, on getting a renewal, pays the discount therefor, including usury, it then occurs, within Rev. St. U. S. § 5198, allowing action for recovery of usury taken by a national bank within two years from time the usurious transaction occurred.

Appeal from trial term, Allegany county.

Action by Addison W. Smith against the First National Bank of Cuba. From judgment for plaintiff on report of referee, defendant appeals. Reversed.

This action was commenced January 9, 1899, to recover penalties from the defendant, a national bank, for receiving or reserving more than 6 per cent. interest, in violation of sections 5197 and 5198 of the United States Revised Statutes. The fact appears, without contradiction, that as to a series of notes negotiated by the plaintiff with the defendant the latter did receive money in excess of the legal rate of interest, but several defenses are interposed, an appreciation of which renders necessary a review of the various transactions. On November 18, 1897, the plaintiff presented to the bank a promissory note of $5,000, due in three months, signed by Julia A. Smith, the mother of the plaintiff, to the order of A. W. and C. S. Smith. A. W. Smith is the plaintiff, and C. S. Smith his brother. The note was duly indorsed and negotiated with the defendant, which retained for the discount $87.50, which is $12.50 in excess of the legal rate of interest. This note was renewed at its maturity by a note February 18, 1898, signed and indorsed as the original note, but the avails of the said note, $4,911.55, less the discount, were placed to the credit of the maker, and the note of $5,000 was charged to her account. A precisely similar transaction occurred three months later, and also, upon a further renewal, July 18, 1898. At the maturity of this last note of the series the referee has found that the plaintiff paid the note, but disallowed the discount on the preceding notes, on the ground that it was paid each time by Mrs. Smith, the maker. No question arises as to the statute of limitations over this transaction, and the finding of the referee does no violence to the facts. On the 10th day of August, 1896, the plaintiff negotiated with the defendant a promissory note for $4,761.48, executed by him as maker to the order of the said Julia A. Smith, and indorsed by her, and payable at the defendant bank three months from its date. The proceeds of this note, less the discount ($83.35), were credited to the account of the plaintiff. This note was renewed in about three months by a like note, but the avails were credited to the Smith estate, and the prior note charged up to that account. A like renewal was had in February, 1897, and the same disposition was made of the proceeds, and that note was also charged to the account of the Smith estate. Again, this note was renewed by another similar in form in May, 1897, and on that day there was charged to the account of Julia A. Smith in the bank $100, and to the Smith estate $37.55, covering the discount on this note and another one, and this note was paid in full by the plaintiff about November 20, 1897. On these notes the excess of interest reserved each time was about 1 per cent., and the referee, finding this was paid by the plaintiff, allowed him to recover therefor, less the sum of $100 charged to the account of Julia A. Smith. On the

2d day of January, 1896, the plaintiff negotiated with the defendant a promissory note of $3,000 made by Julia A. Smith to the order of A. W. and C. S. Smith, and duly indorsed, and due in three months, and the avails thereof, less the discount of $61.25, or an excess beyond the lawful rate of $16.25, were credited to the Smith estate. This note was renewed from time to time, the avails each time being credited to the account of the Smith estate and the note charged to the same account until the last note of this series, which was given May 10, 1897, the discount whereof was charged to Julia A. Smith and the $37.55 to the Smith estate, as above mentioned. The discount on these several notes was paid by the plaintiff, who finally paid the note in full, November 20, 1897. It is apparent, therefore, that these notes were all made and negotiated for the benefit of the plaintiff, but the evidence is not as clear as it should be as to the person paying some of the payments of interest or discount. There were three distinct accounts in the bank,—one of the plaintiff, one of his mother, and one denominated that of the Smith estate. Just who composed the latter does not appear, except that the indorsers were brothers, and the defendant seemed to exercise the privilege of charging the discount to any of these accounts which were sufficiently large to meet it in case the plaintiff's account was inadequate for that purpose. The evidence shows unmistakably that the plaintiff paid these notes, and he testified also that he paid the discount each time it arose. The final payments were made by a loan upon his mother's property, but he secured her; so that he in fact paid the debts. Pass books were written up at regular intervals of these three accounts and delivered to the persons entitled to them, so that we may assume each party interested was advised of the course adopted by the defendant. There are also other notes involved in this litigation; but as the referee did not allow any recovery for the illegal interest reserved on them, it is unnecessary to go into their history.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, RUMSEY, and HISCOCK, JJ.

Stanley J. Swift, for appellant.
F. M. Todd, for respondent.

SPRING, J. Section 5197 of the Revised Statutes of the United States restricts the rate of interest which may be charged or reserved as discount by a national bank to the rate allowed in the state where the bank is located. Section 5198 provides: First, for the forfeiture of the entire interest as a penalty for taking usurious interest; and, secondly, that an action may be maintained by the person who has paid the excessive interest to recover "twice the amount of the interest thus paid from the association taking or receiving the same, providing such action is commenced within two years from the time the usurious transaction occurred." The sole question for our determination is, when did "the usurious transaction" occur? When the first of each series of notes was given, nothing was paid by the plaintiff. He received the face of the note, less the discount, but he paid no interest. This was in the note which he transferred to the defendant. A different situation was presented when the note matured. The plaintiff then gave a new note, of like amount with the original, and paid the discount, including the excessive rate. This was, therefore, a genuine payment, a parting with the interest by the plaintiff, and constituted a "usurious transaction," within the letter of the statute quoted. Each actual payment on each renewal was a separate, independent transaction, and the statute of limitations actually commenced to run from the date of each payment. The plaintiff had withdrawn all

the avails of the various loans, so that it cannot be claimed that he paid the discounts from time to time out of the identical moneys which he received from the defendant for these notes. The confusion which has arisen over the question as to when the statute of limitations commences to run upon payments of excessive interest in contravention of the section referred to is attributable in a large measure in failing to distinguish between an actual payment and one that is carried along with the principal indebtedness. In McBroom v. Investment Co., 153 U. S. 318, 14 Sup. Ct. 852, 38 L. Ed. 729, relied upon by the referee and the respondent's counsel, there is nothing in conflict with this plain rendering of the statute. In that case the defendant loaned to the plaintiff $65,000, payable in six years, with interest at the rate of 12 per cent. per annum. He gave a note for the principal sum and several notes for the interest at the stipulated rate, and also paid out of the avails to the agent of the defendant $6,500 in cash. The plaintiff paid no part of the principal debt, and only the the first of the notes for interest, and sued to recover as a penalty twice the bonus and the interest originally paid, although the claim for the latter was abandoned. The action was brought pursuant to a statute of New Mexico, where the transaction occurred, and which statute is akin to the one under consideration. In the New Mexico statute the action was maintainable to recover "double the amount so collected or reserved upon any action brought for the recovery of the same within three years after such cause of action accrued." The agent to whom the $6,500 was paid was acting for the company by an agreement which provided that any bonus paid should inure to the benefit of the defendant, so that this bonus was equivalent to a usurious transaction with the defendant. It is therefore precisely the same as if the defendant had retained out of the avails of the loan the bonus of $6,500 which made up the usury. It was not money paid by the plaintiff, independently of the loan, but it was part of the note, and until he paid that obligation there was no payment of usury exacted. The pointed distinction between that case and the present one is that here, as each note matured and was renewed, the plaintiff actually paid the discount in cash, and, of course, the discount or interest was not carried along in the note. When he paid the note in full he did not pay the discount over again, as it was not in the note. When the payment of interest or discount was made, that transaction was completed, and the defendant had no election after that to apply this in reduction of the note. That principle only applies where the discount is added to the note. Had there been no renewal note given, or, if given, had it in each instance included the interest, the McBroom Case would be applicable. In Brown v. Bank, 169 U. S. 416, 18 Sup. Ct. 390, 42 L. Ed. 801, the court recognizes the distinction here made, citing the McBroom Case as its authority, and say:

"Sometimes interest is said to have been paid when it is evident that it was only included in a renewal note. But that, as we have said, was not payment, within the meaning of the statute. Driesbach v. Bank, 104 U. S. 52, 26 L. Ed. 658. If the note when sued on includes usurious interest, or interest upon usurious interest, agreed to be paid, the holder may, in due

time, elect to remit such interest, and it cannot then be said that usurious interest was paid to him."

And again:

"If at any time the obligee actually pays usurious interest as such, the usurious transaction must be held to have then, and not before, occurred, and he must sue within two years thereafter."

In Nash v. Bank, 68 N. Y. 396, the notes transferred to the bank by the plaintiff were those of third persons, and the court held this was an actual payment, as the plaintiff had parted with all his title, and it was equivalent to the payment of usurious interest in cash. That case is helpful, in that it indicates that if the payment is a genuine one, instead of existing as a liability against the person seeking to recover for the overcharge of interest, it is regarded as a transaction separate from the note itself. Had the plaintiff in this action turned over the promissory note of a third person to meet the discount when one of the notes was renewed, under the Nash Case that would be regarded as a payment of the discount, the same as if made in money, and in either event the transaction would be ended and the statute commence to run, although the statute of limitations was not considered in that case. In Bank v. Lewis, 75 N. Y. 516, 31 Am. Rep. 484, and Id., 81 N. Y. 15, the action was by the bank on its note, and the defendant answered, setting up the illegal interest exacted, and claiming that there was a forfeiture of the interest paid, and asked for its allowance in abatement of the sum unpaid on the note. It involved the construction of the first part of section 5198, and not that part which controls in this action. There are several cases in other states which recognize the doctrine that where the interest has been paid, instead of embodied in the note, that such payment constitutes a usurious transaction, within the import of this section. Lynch v. Bank, 22 W. Va. 554, 46 Am. Rep. 520; Bank v. Alves, 91 Ky. 142, 15 S. W. 132; Bank v. Smith, 36 Neb. 199, 54 N. W. 254. It is a reasonable interpretation of the statute to hold that upon the actual payment of the interest or discount the cause of action accrues, and the two years' statute of limitations commences to run from the date of that payment. Several of the payments made by the plaintiff and allowed by the referee were improperly allowed, as they were barred by this statute. While two of the series of notes were made by Julia A. Smith as maker, yet they were really for the benefit of the plaintiff, and he eventually paid them, and testified that he also paid the discount or interest, and we apprehend that these loans may not be said to be those of third parties, within the Nash Case cited above. The payments which were charged to the account of Julia A. Smith were disallowed, while those charged to the Smith estate were treated as if made by the plaintiff. It does not appear definitely who composed the estate, and the plaintiff testified that he paid all the discounts or interest. In view of the uncertainty of the proofs as to the person who actually made these payments, we deem it unwise to attempt to modify the judgment conformably to this opinion, believing that upon a retrial the facts can be more fully developed and dissipate the obscurity which the record

shows. The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.