## McCARTHY v. FIRST NATIONAL BANK OF RAPID CITY

Under Rev. St. U. S. § 5198 (U. S. Comp. St. 1901, p. 3493), declaring the charging a rate of interest by a national bank greater than is allowed by the laws of the state where the bank is located, when knowingly done, to be a forfeiture of the entire interest, and providing that, where a greater rate has been "paid," the person paying it may recover in an action of debt of the bank receiving it twice the amount of interest paid, provided such action is commenced within two years from the time usurious transaction occurred, a cause of action for the penalty arises immediately, and only when one who has given a bank a usurious note actually pays money thereon, which, with his knowledge and consent, it applies in payment of usurious interest, regardless of whether the principal debt has been paid.

An application by a national bank of a payment on a usurious note to payment of the usurious interest, with the knowledge and con-

sent of the maker, so that the two-year limitation for recovery pre-scribed by Rev. St. U. S. § 5198 (U. S. Comp. St. 1901, p. 3493), of the penalty begins to run is shown, where on the back of the note is indorsed interest paid at a usurious rate, and such note is taken up and a new note given, in renewal, for the amount remaining unpaid after allowing such usurious rate.

                    ＼ (Opinion filed, May 21, 1909.)

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by Patrick B. McCarthy against the First National Bank of Rapid City, S. D. Judgment for defendant. Plaintiff appeals. Affirmed.

*Charles W. Brown, Schrader & Lewis,* for appellant.

Under section 5198 of the Revised Statutes of the United States, the limitation of two years within which the borrower may sue for double the amount of usurious interest collected and received from him does not commence to run, and, therefore, the cause of action does not accrue, until the lender has actually collected or received more than the original debt. McBroom v. Investment Co., 153 U. S. 318; Investment Co. v. McBroom, 30 Pac. 859; Duncan v. First Nat. Bank, 8 Fed. Cases, 11; First Nat. Bank v. Denson, 22 So. 518; Hazeltine v. Cent. Nat. Ban., 56 S. W. 895; First Nat. Bank v. Childs, 130 Mass. 519; First Nat. Bank v. Turner, 42 Pac. 936; First Nat. Bank v. McInturff, 43 Pac. 839; Louisville Tr. Co. v. Ky. Nat. Bank, 102 Fed. 442; Same v. Same, 87 Fed. 143; Harvey v. Nat. L. Ins. Co., 60 Vt. 209; Cotton States Bldg. Co. v. Peightal, 67 S. W. 524; Wheaton v. Hubbard, 20 Johns. 290; Stevens v. Lincoln, 7 Met. 525; Saunders v. Lampert, 7 Gray, 484; Smith v. Robinson, 10 Allen, 132; Hall v. First Nat. Bank, 30 Neb. 99; Kendall v. Crouch, 11 S. W. 587; Talbot v. First Nat. Bank, 185, U. S. 172; Talbot v. Sioux Nat. Bank, 185 U. S. 182. At common law, the borrower could not recover the penalty given by the statutes relating to usury, without paying or offering to pay at least the principal of the loan. Wheaton v. Hibbard, 20 Johns. 290; Investment Co. v. McBroom, 30 Pac. 859; Stevens v. Lincoln, 7 Met. 525; Saunders v. Lambert, 7 Gray 484; Smith v. Robinson, 10 Allen, 130; McBroom v.

Investment Co., supra; Hazeltine v. Central Nat. Bank, supra; First National Bank v. Denson, supra.

*Buell & Gardner,* for respondent.

Under section 5198 of the Revised Statutes of the United States, the limitation of two years within which the borrower may sue for double the amount of usurious interest collected and received by him, commences to run at the time of the payment of usurious interest and suit must be entered within two years from the date of payment. Brown v. Bank, 169 U. S. 416; Walsh v. Mayer, 111 U. S. 36-37; First Nat. Bank v. McCarthy, 18 S. D. 218; Wilson v. Selbie, 7 S. D. 494; Lealos v. Union Nat. Bank, 81 N. W. 56; Smith v. First Nat. Bank, 75 N. Y. 131; Gunby v. Armstrong, 133 Fed. 417; First Nat. Bank v. Smith, 54 N. W. 254; Lanham v. First Nat. Bank, 65 N. W. 780; Washington Bldg. & Loan Assn. v. Wendlung, 46 S. E. 296; Burnside v. Mealer, 80 S. W. 785; Buntyn v. Nat. Bldg. & Loan Assn., 38 So. 345; Talbot v. Bank, 82 N. W. 963; Chadwick v. Menard, 20 So. 933; Webb on Usury, Sec. 526. Without the statute there can be no recovery from the bank for usurious interest actually paid, and as the statute which grants the right to such recovery also prescribes the remedy, that remedy is exclusive of all others for the enforcement of such right. Farmers, etc., Bank v. Dearing, 91 U. S. 29; Stephens v. Monongahela Nat. Bank, 111 U. S. 197; Carter v. Caruse, 112 U. S. 478; Hazeltine v. Central Bank, 183 U. S. 132; Schuyler Nat. Bank v. Gadsden, 191 U. S. 451; Cox v. Beck, 83 Fed. 269; Norfolk Nat. Bank v. Schwenk, 64 N. W. 1073; Wiley v. Starbuck, 44 Ind. 298; Marion Nat. Bank v. Thompson, 101 Ky. 277; Barker v. Rochester Nat. Bank, 59 N. H. 310; Fayette County Bank v. Dushane, 96 Pa. St. 340; Hill v. Nat. Bank, 56 Vt. 582. Where an interest greater than that allowed has been actually paid, such interest cannot be set off against the principal sum in an action to recover the debt. The right to sue to recover twice the amount of usurious interest paid, given by Section 5198 of the Revised Statutes, is the exclusive remedy. Barnett v. Nat. Bank, 98 U. S. 555; Driesbach v. Wilkesbarre Nat. Bank, 104 U. S. 52; Stephens v. Monongahela Nat. Bank, supra; Hazeltine v. Central Nat. Bank, supra; Schuyler Nat. Bank v. Gadsden, supra; Danforth v. Nat.

State Bank, 48 Fed. 271; Rockwell v. Farmers Nat. Bank, 4 Colo. App. 562; Grundy, etc., Bank v. Moore, 83 Ia. 740; Petersboro, etc., Bank v. Childs, 133 Mass. 248; Gadsden v. Thrush, 56 Neb. 565; Nat. Bank v. Lewis, 81 N. Y. 15; Hade v. McVey, 31 Ohio St. 231; Fayette County Bank v. Dushane, 96 Pa. St. 340; Comanche Nat. Bank v. Dabney, 44 S. W. 413.

WHITING, J. This cause comes before this court upon an appeal from the judgment of the circuit court and from the order of said court denying a new trial. The action was one brought by the plaintiff and appellant, Patrick B. McCarthy, against the defendant and respondent, First National Bank of Rapid City, to recover penalties in the sum of $7,605.48, being twice the amount of usurious interest which plaintiff claims he paid to the defendant, and that defendant received in violation of sections 5197 and 5198 of the United States Revised Statutes (U. S. Comp. St. 1901, p. 3493). For the purpose of this appeal, the following facts may be taken as established: In August, 1887, plaintiff loaned of defendant $4,000, evidenced by four promissory notes of $1,000 each, payable three, six, nine, and twelve months after date, with interest on each note at 18 per cent. per annum until paid. These notes were extended until August 7, 1888, when a new note in the sum of $4,000 was given by plaintiff, his wife, and one other party. This note was due in 90 days, with interest at 18 per cent. per annum. Considerable interest upon this note was paid, but no part of the principal, and on May 22, 1889, a new note was given signed by plaintiff, his wife, and a third party, which said note was for $5,000 due in one year, bearing interest at 12 per cent. per annum. Nine hundred dollars was paid and indorsed as interest upon this note, and on July 22, 1891, a new note of $5,000 was given by plaintiff and his wife, the same due in six months, bearing interest at 12 per cent. per annum. This last note was secured by a mortgage upon real estate belonging to the makers. It is admitted that the only consideration for this last note was the original $4,000 loaned to plaintiff, together with certain usurious interest upon such original loan. It is admitted that the plaintiff made a large number of payments dating from February 8, 1892, down to January 2, 1896, upon this note, all of which payments

were indorsed upon said note as interest, and upon February 17, 1896, the plaintiff and his wife gave to defendant two notes in renewal, one for $5,000 due in four months with 12 per cent. interest, the other for $675.50, due in 30 days, with 12 per cent. interest; this last note purporting to be interest upon the note of July 22, 1891. Payments as and for interest were made upon the last $5,000 note; the last payment being made on or before January 1, 1897. It is alleged and admitted that the total payments by way of interest and which were by the defendants applied as interest upon the several notes aggregated the sum of $3,802.74, for twice which the plaintiff brought this action. On January 25, 1897, the defendant in this action commenced an action against the plaintiff and his wife for the foreclosure of the mortgage securing the above-mentioned notes, and to recover the amount due by the terms of said mortgage and notes thereby secured. The plaintiff herein appeared as defendant in said action, set up the facts hereinbefore stated in regard to the usurious interest on the original notes, and prayed that said mortgage and notes be adjudged to be usurious and be purged of the usury therein. Such proceedings were afterwards had that in May, 1901, judgment was rendered in the trial court in favor of the defendant in this action and against the plaintiff herein and his wife, whereby it was held that the said bank could recover the full amount apparently due under said notes. From this judgment the present plaintiff appealed, and this court in the case of First National Bank v. McCarthy, 18 S. D. 218, 100 N. W. 14, modified the judgment of the trial court, holding that under said evidence it appeared that the said indebtedness evidenced by the notes sued upon was usurious in all sums exceeding the original $4,000, and ordered that judgment be entered for said $4,000, together with certain sums which the bank had paid for, and on account of taxes on the land described in the mortgage. Judgment in conformity with the opinion of this court having been entered, it was alleged in the complaint in this action that on January 21, 1905, the plaintiff paid to the clerk of the circuit court the said judgment in full, and on said day said judgment was duly satisfied and discharged of record. This ac-

tion was commenced January 25, 1905. Prior to the trial below, upon motion of the defendant, the paragraph relating to the payment of said judgment was stricken out, and upon trial the plaintiff sought to offer proof of the fact of the payment of such judgment, which proof was rejected, and also asked to have the allegations concerning payment of the said judgment reinstated in the complaint so that proof of the same might be received, and this request to amend was refused. It is the theory of the plaintiff and appellant that, inasmuch as the total amount of payments prior to the rendition of the judgment above referred to did not amount to the original loan of $4,000, until such judgment was paid, no cause of action arose in plaintiff's favor against the defendant for the penalties provided by section 5198 above referred to. It is the theory and claim of the defense that at the time any payment was made by plaintiff on any of said notes as interest and so appropriated and applied by the defendant that immediately a cause of action for the penalty provided by said section 5198 accrued, and that the statute of limitations provided by said section commenced to run. In fact, in their briefs both parties admitted, there being no dispute as to the facts, the sole question was whether or not the plaintiff's cause of action to recover the penalty claimed in his complaint is barred under and by virtue of the provisions of section 5198 of the Revised Statutes of the United States.

The Revised Statutes of the United States provide: Section 5197: "Any association may take, receive, reserve and charge on any loan or discount made or upon any note, bill of exchange, or other evidence of debt interest at the rate allowed by the laws of the state, territory or district where the bank is located, and no more. * * *" Section 5198. "The taking, receiving, reserving or charging a rate of interest greater than is allowed by the preceding section when knowingly done shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid or his legal representatives may recover back, in an action in the nature of an action on debt, twice the

amount of the interest so paid, from the association taking or re-
ceiving the same, provided such action is commenced within two
years from the time the usurious transaction occurred. * * *"
This cause has been very fully briefed on behalf of each party and
a large number of authorities have been cited, and the briefs con-
tain extensive quotations from the holdings of the several courts,
both federal and state; and, while a reading of the two sections
of the federal statue above referred to might not at first awaken
any doubt as to the meaning of the several parts thereof, yet a
reading of the cases cited apparently presents for consideration an
irreconcilable conflict of opinion as to the legal effect of such
sections. We believe, however, that a thorough study of these
cases, together with the facts in each case, will show, with pos-
sibly one or two exceptions, that there is no real conflict upon the
construction which should be given to these sections as applied
to the facts in this case. In reviewing and analyzing many of the
decisions, as we shall do herein, it will be found that many of the
cases cited in support of appellant's contention are based upon
some previous ruling in these or other cases, which rulings will be
found not to support the position claimed for them. In view of
the importance of the question herein involved and the apparent
conflict between the opinions of courts of very highest rank, we
deem ourselves justified in a somewhat extended consideration of
this case.

It will be noticed that there are two entirely different parts
to section 5198, supra—the first provides for forfeiture of all in-
terest unpaid when usury has been contracted for and such usury
enters into the note or the consideration for such note; the second
provides for an action to recover as a penalty double all interest
paid whenever such interest so paid is in part usurious. The
courts uniformly hold that under the first a debtor can defend
against the paying of any interest, either legal or usurious; while,
on the other hand, if, in fact, he has made any payment or pay-
ments on interest even to the extent of paying usurious interest, he
cannot plead such payment either as a credit on the principal or
as an offset or counterclaim to the principal, but his only remedy
for such usury paid is found in the second part of said section,

and consists solely in his right in a separate suit brought under the second part of said section to recover the penalty therein provided for. In other words, that the common-law remedy by a suit or counterclaim for money had and received will not lie. Schuyler Nat. Bank v. Gadsden, 191 U. S. 451, 24 Sup. Ct. 129, 48 L. Ed. 258; Haseltine v. Central Nat. Bank, 183 U. S. 132, 22 Sup. Ct. 50; Driesbach v. Wilkesbarre Nat. Bank, 104 U. S. 52; Barnet v. Nat. Bank, 98 U. S. 555; Farmers', etc., Bank v. Dearing, 91 U. S. 29; Walsh v. Mayer, 111 U. S. 31, 4 Sup. Ct. 260; Stephens v. Monongahela Bank, 111 U. S. 197, 4 Sup. Ct. 336. We call particular attention to the above propositions, as they seem to us very material upon the construction to be placed on this question of when the statute of limitations begins to run, and theses holdings will be hereinafter referred to. The courts also uniformly hold that the including of interest in a renewal note is not a payment of such interest so as to entitle maker to sue for the penalty provided for payment. Neither is the deduction of a discount from the amount of the note, taken at the time of giving the note, a payment of such discount so as to authorize a suit for the penalty providing the amount of the discount is usurious. Brown v. Marion Nat. Bank, 169 U. S. 416, 18 Sup. Ct. 390; Driesbach v. Wilkesbarre Nat. Bank, 104 U. S. 52; Louisville Traction Co. v. Ky. Nat. Bank, 102 Fed. 442; McBroom v. Investment Co., 153 U. S. 318, 14 Sup. Ct. 852; Harvey v. Nat. Life Ins. Co., 60 Vt. 209, 14 Atl. 7; First Nat. Bank v. McInturff, 3 Kan. App. 536. These cases are based upon the theory that the mere reserving of a discount or the including of accrued usurious interest in a renewal note, while it may be the "reserving or charging" of usury, it is not the "paying" of same.

Where the authorities divide is upon the question of whether when the maker of a note has paid money thereon which the payee, with maker's knowledge and consent, has applied in payment of usurious interest, a cause of action at once arises for the penalty provided by section 5198 regardless of whether the principal debt has been paid, or whether, on the other hand, no such action arises on behalf of the maker of such note until he has made payment thereon in excess of the original debt and legal in-

terest thereon. The respondents take the first position and the appellants the latter, and a determination of this point determines this cause. We think that many of the cases upholding the latter position have erred through not making a careful distinction between cases where payments had been made which payments had been applied upon usurious interest with the knowledge and consent of the debtor and cases where such application had been made or attempted to have been made by the creditor without the consent of the debtor. A distinction between the two classes of cases will be noted as running throughout many of the decisions hereinafter referred to. Those cases which uphold the appellant's contention are founded upon the theory that, although the payee may have applied money upon usurious interest, yet no matter how long the indebtedness may have run, and no matter how many such applications there may have been, and no matter how many renewals had been made by the giving of new notes for amounts greater than would be due if only legal interest had been charged on the prior notes during all this time, which may extend one or even ten years, the doctrine of locus pœnitentiæ will be held to apply on behalf of the payee up to such time as he takes a payment which with all other payments received exceeds the amount of the original debt and legal interest; the courts holding that, up to that time the payee had an election, he might repent and reapply all the payments charging only legal interest. The cases supporting respondent's position hold that, while the payee after contracting to take, receive, or charge an usurious interest has at all times before applying a payment the benefit of the doctrine of locus pœnitentiæ, yet, if he does actually make the application of a payment to the payment of usurious interest, his election as against him is final, and he becomes at once liable for the penalty. And, furthermore, if when such payment is made and applied such application is with the consent of the debtor, the maker of the note, then, as against his right to action to recover, the statute immediately commences to run.

It is true there are some early cases brought for the recovery of usurious interest under different statutes which have held that an equitable rule should apply, and the debtor should not be en-

titled to recover a penalty until he has done equity by paying the debt with legal interest in full, but we fail to see wherein any equitable question can arise in this class of cases. These statutes were enacted for the purpose of preventing the taking of usurious interest, and to punish the creditor for contracting for the receiving of usury. There certainly is no question of equity, as ordinarily understood, in any statute providing for penalty, forfeiture, or punishment. On the other hand, what the debtor is entitled to recover by way of penalty or to avoid by way of forfeiture is nothing to which he is equitably entitled, but is based more on the principle underlying the rule of punitive damages. It is not to recover simply what he has suffered, but at the same time to punish the creditor for wrongdoing. Neither does it seem to us that there is either reason or logic in attempting to apply the rule of locus pœnitentiæ to any case where a party has made an absolute application of money received by him, and continued his business transactions with the party making the payment upon the basis of such application. Of course, all laws against usury are based upon the idea that the contracting for or taking of the same is a wrong. It might as well be said that the embezzler, after converting the thing embezzled, or the thief after taking the thing stolen, when the converting and taking had been with criminal intent, still has the locus pœnitentiæ, and can purge his soul of the crime. As we have noted above, the courts are unanimous in holding that under this statute the maker of a note when sued thereon cannot plead the payments of usury either as a credit on the note or as a counterclaim or offset. So in the case at bar, when the plaintiffs were sued on the notes herein, they could not plead in any manner as a defense to the principal of said note any part of the large sum which they had paid as interest. Why was this? Because they were payments which had by the act of both parties already been applied on usury. It may well then be asked can these payments be held to have been such payments for one purpose, to wit, to prevent the debtor from receiving a credit therefor, while, on the other hand, the law be allowed to step in and relieve the payee who has made this application, and say to him, "You have done no wrong for which you can be holden, be-

cause perchance the debtor has been unable to pay the debt."
In considering any interpretation to be put on the section in ques-
tion, it is well to bear in mind two other propositions sustained
by the courts. The penalty to be recovered is twice all the in-
terest that has been paid, not merely twice the excess which has
been paid above legal interest. First Nat. Bank v. Watt, 184 U.
S. 151, 22 Sup. Ct. 457; Louisville Trust Co. v. Ky. Nat. Bank,
87 Fed. 143. The action for the penalty can only be brought by
the party who made the payment or by his representatives. Lealos
v. Union Nat. Bank, 9 N. D. 60, 81 N. W. 56.

Let us consider briefly the results which might flow from the
enforcement of the rule contended for by the appellants. A party
giving a note makes numerous payments which have been applied
upon usurious interest with his consent. This note is secured on
real estate. He sells the land, and the purchaser assumes the in-
debtedness and then pays the note. Who would have a right to
recover for the penalty? A debtor and creditor, having had
usurious dealings for several years, reach an adjustment of the
balance which they consider should be paid by the debtor, and
which balance could only be reached by crediting some other
previous payment upon usurious interest. A new note is given
upon this settlement, which new note draws legal interest. The
debtor pays this conventional interest for more than two years,
but no part of the principal. The conventional interest is the ex-
treme legal interest allowed by statute. The debtor sues to re-
cover the penalty provided by the federal statute. Under appel-
lant's contention he cannot recover; but, while the result reached
is just and right, the reason upon which the same is based is not
because whatever wrong has been done by the creditor is barred
by the statute, but rather upon the ground that the creditor has
yet a chance to repent of the wrong done years before, and the
appellants would hold that if, on repenting, he afterwards receives
the principal of this new note, he will render himself liable to an
action for the penalty; though perchance, if at the time he took
the usury he had stolen debtor's horse or committed any other
crime except murder, not only the limitations as to time for crim-
inal prosecutions would have run, but the regular six-year statute

fixing the time within which actions for damages might be brought may have run. A party gives a note under exactly the same conditions as last above mentioned, and, after paying conventional interest for one or more 'years to his creditor, a national bank, such bank then assigns the note to a party, not a national bank, and the debtor continues to pay the conventional rate of interest, but no part of the principal. Under appellant's theory no recovery could be had. Neither could there be under respondent's theory. But, suppose debtor finally pays the principal, then under appellant's theory, if the note had not been assigned, the payee would be liable for the penalty. Under the facts as stated, where there had been an assignment of the note, who would be liable? Instead of the above case, where a settlement had been attempted to be made so that the new contract should be fair and without usury, take a case where a note is given for $1,000 and $100 discount is deducted, $900 being paid to the debtor, and such note drawing 12 per cent. interest. Here we have usury in the new contract. Then, letting the facts as to the payment of interest and principal and as to the assignment of the note be as in the illustrations above given, it will be found that the results will be exactly the same on appellant's theory while the moral wrong is entirely different, but under respondent's theory the remedy would in each case fit the wrong. Suppose a case where the note is given for the exact amount loaned, but the note provides for a usurious rate of interest, such interest is paid from year to year with the knowledge and consent of the debtor and settlement made on that basis, but such payments never amounted to the principal of the note. This is practically the case at bar, except that we will suppose the payments of interest as made were part at least within two years of the time debtor seeks to recover. The debtor, under appellant's theory, cannot recover, and there will never come a time within which he can recover unless he shall pay enough to amount to the principal, together with perhaps hundreds of dollars of legal interest. He has absolutely no remedy against the party who has crushed him, but who still perchance holds a debt against him as large as the original loan; but if he can raise enough money to pay even one dollar more, and this, with what

he did pay before, should exceed such principal and legal interest, then immediately he shall have a cause of action, not for this excess over the principal and legal interest, which in this case would be less than a dollar, but for twice all the interest he has ever paid, no matter whether for 2 or 20 years in the past, which penalty might amount to more than the principal of the debt. Many further illustrations might be given, but the above we think are sufficient to show, not only the injustice of appellant's position, but the unsoundness from a legal point of view.

Nevertheless there are authorities that apparently hold squarely to the theory contended for by appellants, and other authorities which have been so construed by some courts and are so construed by the appellants. We will call attention to each and every one of the cases cited by appellant. An examination of the four cases below will show that neither of them is in any manner in point as sustaining appellant's position. First Nat. Bank v. Childs, 130 Mass. 519, 39 Am. Rep. 474; Hall v. First Nat. Bank, 30 Neb. 99, 46 N. W. 151; Talbot v. First Nat. Bank, 185 U. S. 172, 22 Sup. Ct. 612; Wheaton v. Hubbard, 20 Johns. (N. Y.) 290. The case of Smith v. Robinson, 10 Allen, 130, was based upon a state statute, and was a suit in equity to redeem land from foreclosure. The party seeking to redeem had asked credit for three times the amount of usury included in the face of the note secured by the mortgage. There was no evidence that this usurious interest had ever in fact been paid. It will thus be seen that that case has no application to the facts in the case at bar where payments had actually been made and by mutual consent applied in settlement of the usurious interest. In Saunders v. Lampert, 7 Gray (Mass.) 484, there was no application of the money paid to any usurious interest. Stevens v. Lincoln, 7 Metc. (Mass.) 525, merely decided that including usury in the note or check is not a payment of such usury. Harvey v. Nat. Life Ins. Co., 60 Vt. 209, virtually held that the taking of usury as a discount at the time the note is given is not a payment of usury. Kendall v. Crouch, 88 Ky. 199, 11 S. W. 587, was a case in which usury was included in a renewal note, and it was held not to be a payment of usury. Cotton States Bldg. Co. v. Peightol, 28 Tex.

Civ. App. 575, 67 S. W. 524, is not a national bank case, and is
controlled by rulings of the state court, whereby all usurious in-
terest is applied on principal, and the penalty is only imposed
where amount paid exceeds principal and interest.    Louisville
Trust Co. v. Kentucky Nat. Bank, 87 Fed. 143, holds the same as
Kendall v. Crouch, supra, and this holding is approved in the same
case in 102 Fed. 442, in which case the court hold flatly with the
contention of respondent herein.    After reciting the facts, which
are very similar to the facts in this case, wherein it is shown
that there had been a long course of usurious transactions between
the parties, and which at last finally culminated in the giving of
$30,000 in settlement, and after referring to the statutes of Ken-
tucky under which the court held the money which had been paid
prior to the giving of this note would have necessarily been ap-
plied on the interest even if usurious, the court says: "All in-
terest whether excessive or otherwise, which had been charged
by the defendant up to the giving of that note under the stress of
the statutory provisions last referred to, must probably be consid-
ered as having been 'extinguished' by the payment made, and if
this be so, the statute of limitations as to this phrase of the case
began to run as of that date, which was more than two years
before this action was brought.    But apart from the provision of
the Kentucky statute just quoted, and whatever weight it may be
entitled to, it would be difficult either to reach or to sustain any
other conclusion than that it was intended, alike by the defendant
and by Thomas & Son, that everything, including interest, usury,
as such, and a large amount of the principal, was settled at that
date, except the $30,000 note then given.    Thomas & Son were
always in need of money.    They borrowed it.    They voluntarily
paid the excessive interest.    They manifested no election to re-
claim it at the time of the settlement of July 8, 1893, and no other
conclusion could be fair than that it was meant upon that occa-
sion to extinguish every obligation of the defendant and of
Thomas & Son, respectively, except that of the latter to pay to
the bank $30,000, as provided for in the note of that date."
    .    The case of First Nat. Bank v. McInturff, 3 Kan. App. 536,
holds directly with the appellant in this case, and bases its holding,

not upon the doctrine of locus pœnitentiæ, but the court says: "It is contended by the defendant in error that the record discloses that the bank treated each of the renewal notes as a payment of the note formerly given, and that, therefore, he was entitled to recover upon each of said notes so treated by the bank as having been paid. This position is not well taken. Each of the notes given after the maturity of the original note of this series was simply a renewal, and was so treated by all parties. Any payment which may have been made upon either the original or either of the renewals of this series would, in an action brought upon said note, be credited as payment upon the principal sum; all interest being forfeited in the event that it was shown that the transaction was tainted with usury. But a cause of action would not arise for the penalty prescribed by statute until a sufficient amount had been paid to cover the principal sum represented by said series of notes. Bank v. Turner, 3 Kan. App. 352, 42 Pac. 936.". There is no other discussion as to the reason for this holding, and upon examination of the case cited (3 Kan. App. 352, 42 Pac. 936) there is the bare holding that the statute does not run until the principal debt is paid. There is no discussion whatever as to the reasons for this holding, and the only authority, cited in support is the case of Bank v. Grimes, also a Kansas case found in 49 Kan. 219, 30 Pac. 474. Upon an examination of Bank v. Grimes, it will be found that the only question involved in the determination of that case was whether the following charge of the trial court to the jury was correct: "If you should find from the evidence in this case that the original note was renewed from time to time without making a new and separate contract, and that usurious interest was embraced in such renewal notes then you are instructed that the mere renewal of the original note would not purge the transaction of usury in the original note." This instruction was certainly correct law, and in no way inconsitent with respondent's contention in this case. We therefore find upon analysis that the Kansas cases have neither weight in reasoning nor from the authorities which they cite. In passing we would state that this case of Bank v. Grimes refers extensively to the case of Driesbach v. Bank, supra, as holding that the penalty provided for

the taking of usury cannot extinguish or affect the principal, but that the remedy for same must be enforced as the statute prescribed. As we have before noted, this is the uniform holding of the courts, and it is readily seen that it is entirely inconsistent with the theory that, regardless of the acts of the parties, the courts can apply all payments to legal interest and principal, although the parties have agreed upon a usurious interest. If in any case the court, regardless of the acts of the parties, has a right to so apply the payments, then it should apply them at all times, in that manner crediting all payments above legal interest upon the principal of the note wherever the facts are as in the Driesbach case.

Appellant cites the case of McBroom v. Investment Company, 6 N. M. 573, 30 Pac. 859, as well as the same case in 153 U. S. 318, and, inasmuch as it is the different constructions put upon this last case which have led to the apparent doubt as to what the law of the federal courts is, it is well to consider the same to some length. In the territorial court the statement of facts shows that a loan was made and note given for $65,000, but a discount of $6,-500 was taken out and the balance paid over to the maker of the note. The real question involved in this case was whether or not the reservation of such $6,500 was a payment of usury when so reserved, under which the maker of the note could sue and recover penalty provided by the statutes of the territory. It appears that such statutes provided as a penalty the recovery of three times the excess of the money paid over the legal interest. It will thus be seen that the real question involved in the case at bar was not to be found in the McBroom Case. There can be no question under the authorities that the reservation of this discount did not amount to a payment, but the trouble which has arisen over this case is from the fact that the court went into a long review of the history of the laws against usury, referring to the doctrine of locus pœnitentiæ, and concluding that there can be no recovery of penalty until more than the principal and legal interest have been paid, although as is readily seen this question was in no manner before the court, and that, therefore, what was said by the court on that point was mere obiter dictum in the McBroom Case. In this case, both in the territorial and federal courts, there will

be found cited as authority the following cases: Stevens v. Lincoln, supra; Saunders v. Lambert, supra; Harvey v. Insurance Co., supra; Hall v. Bank, supra; Brown v. Bank, 72 Pa. 209; Kearney v. Bank, 129 Pa. 577, 18 Atl. 598; Neal v. Rouse, 93 Ky. 151, 19 S. W. 171. We have already reviewed the first three cases above mentioned; and as regards the others we can only say that, if there is anything in any one of them that seems capable of such a construction as would uphold the dictum in the McBroom Case, it will be found that every one of such cases, if susceptible of such construction, has been reversed by the later decisions of the same courts holding flatly with the respondent herein. First Nat. Bank v. Smith, 36 Neb. 199, 54 N. W. 255; Bank v. Overholt, 96 Pa. 327; Louisville, etc., v. Nat. Bank (C. C.) 102 Fed. 442; Second Nat. Bank v. Fitzpatrick, 111 Ky. 228, 63 S. W. 459, 62 L. R. A. 599. It will thus be seen that there is no support in the authorities cited for the obiter dictum found in the McBroom Case in both courts. In the federal court in the McBroom Case the court cites the case of Wright v. Laing, 3 Barn. & C. 165-168, and it would seem that a careful consideration of this authority, accepting its reasoning as sound, would be sufficient to destroy the contention of appellant, even if in the McBroom decision there can be found anything which would indicate that the court rendering it would have held with the appellant under the facts in this case. The following is from such quotation: "None of the payments were appropriated by either party at the time of payment. If the law ought now to make such an appropriation as the pleader has supposed in this court, the count will be sustained by the proof; otherwise not. * * *. Because peradventure the lender might repent the illegal bargain, and refuse to receive the full amount of the second bill, and the law will allow him the opportunity of doing so, that he might not be deemed a receiver of usurious interest, without clear evidence that he had not only bargained to receive, but had actually received, such interest." These two quotations contain exactly the legal propositions contended for by respondent herein. as we understand their position. We cannot therefore see wherein it can be claimed that the Mc-Broom Case in any way supports the appellant. The case of Ha-

seltine v. Central Nat. Bank, 155 Mo. 66, 56 S. W. 895, holds directly with the appellant, but bases its holding solely upon the interpretation which it claims the United ,States Supreme Court had put upon the statute in the McBroom Case, and the court also claims that in their view the case of Brown v. Bank, to which we will hereafter refer, is in no manner conflicting with their interpretation of the McBroom Case, and it concludes by saying that its consideration of the statute is based upon the position taken by courts of equity under the statute of 12 Anne. In the case of First National Bank v. Denson, 115 Ala. 650, 22 South. 518, we have facts exactly similar to those in the case at bar, and the court holds flatly with the appellant. This case also cites for its authority the McBroom Case and the case of Duncan v. First Nat. Bank, 8 Fed. Cas. 11, to which latter case we do not have access, and cannot ascertain the facts therein except as they appear in the quotation from the judge's charge found in appellant's brief. From this quotation it would appear that the legal proposition laid down is as contended for by appellants, but it does not appear that the facts were such as to require the court to go to the extent it did. The only usurious transaction clearly shown to have occurred over two years before the action was brought was the reserving of a discount when the loan was originally made, which we have already seen was not a payment of usury. The facts, as stated, do not show whether or not there was any payment of usury more than two years before such action was brought.

We have now reviewed every authority cited by the appellants, and we think that an analysis of the same will show either a decision given when the matter passed upon was not in issue, or else a decision which was based upon some other authority that does not support the position taken by the court citing same.

We will now consider the cases in support of the respondent's position. First of these, the case of Brown v. Marion Nat. Bank, 169 U. S. 416, 18 Sup. Ct. 390, in which the decision was rendered by Justice Harlan who also wrote the decision in the McBroom Case. This case of Brown v. Bank we find frequently referred to, and the courts seem in great conflict as to what Justice Harlan meant by what he said. It would seem that there is no

chance for quibble.   In one place he says: "The words, 'in case the greater rate of interest has been paid,' in section 5198, refer to interest actually paid, as distinguished from interest included in the note and only 'agreed to be paid.'   If, for instance, one executes his note to a national bank for a named sum as evidence of a loan to him of that amount to be paid in one year at ten per cent. interest, such rate of interest being illegal, and if renewal notes are executed each year for five successive years, without any money being in fact paid by the borrower—each renewal note including past interest, legal and usurious—the sum included in the last note in excess of the sum originally loaned would be interest which that note carried or which was agreed to be paid, and not, as to any part of it, interest paid.   It is difficult to tell from the record when there were actual payments of usurious interest as such. Sometimes interest is said to have been paid when it is evident that it was only included in a renewal note. * * * If at any time the obligee actually pays usurious interest as such, the usurious transaction must be held to have then, and not before, occurred, and he must sue within two years thereafter."   From the above quotation it seems clear that Justice Harlan could not have had in mind the fact that the statute of limitations would not commence to run until more than the principal debt had been paid, and that he did have in mind the fact that there was such a thing as the payment of interest which would become a payment for all purposes including the creating of a cause of action in favor of the debtor, and which would start the running of the statute.   In the case of Smith v. First Nat. Bank, 70 App. Div. 376, 75 N. Y. Supp. 131, the court says: "The confusion which has arisen over the question as to when the statute of limitations commences to run upon payments of excessive interest in contravention of the section referred to is attributable in a large measure in failing to distinguish between an actual payment and one that is carried along with the principal indebtedness."   It then refers to the Mc- Broom Case and analyzes it much as we have above, showing that the question before them was not in the McBroom Case, that that was a case of money paid by the plain- tiff, and in referring to the facts in the case before them

the New York court says: "When the payment of interest or discount was made, that transaction was completed, and the defendant had no election after that to apply this in reduction of the note. That principle only applies where the discount is added to the note." And the New York case refers to the case of Brown v. Bank, supra, stating that Justice Harlan in such case recognized the distinction that they have made, and shows that to be true by quoting from the Brown Case the two quotations we have given above.

In the case of Lynch v. Merchants' Nat. Bank, 22 W. Va. 554, the court quotes an instruction that was asked for by the defendant in the trial court, and states that the following was the correct rule of law: "If the jury believe from the evidence that a greater rate of interest than the rate of 6 per centum per annum was paid by the plaintiff to the defendant on the several loans described in the declaration, and that such greater rate of interest was knowingly received by the defendant upon such loans and discounts, the plaintiff in this action is entitled to recover twice the amount of such interest so paid by the plaintiff to the defendant within two years prior to the commencement of this suit. The jury cannot find for the plaintiff the amount of any interest or twice the amount of any interest which was not so paid within two years from the bringing of this suit upon the notes or renewals executed more than two years prior to the bringing of this suit." In the case of Monongahela Nat. Bank v. Overholt, 96 Pa. 327, the court says: "Upon the actual payment by the borrower and receipt of the illegal interest by the bank, the right of action accrues, and can be maintained whether the debt has been paid or not. This cannot be more clearly expressed than in the words of the statute, and decisions under other statutes having little similarity to this do not warrant departure from the plain meaning of the remedial and punitory provision." And, again, the court says in speaking of the remedy of the debtor: "He may recover back twice the amount of interest thus paid by action in the nature of debt, and this is akin to double or treble damages for injuries allowed by certain statutes for the twofold purpose of compensation and example." In Lebanon Nat. Bank v. Karmany, 98

Pa. 65, the court in referring to the question of election or what we have termed the locus pœnitentiæ, say: "If such interest be paid, the offending bank is liable in an action for twice the amount. That liability is incurred the moment the bank takes the illegal interest. The intendment is to prevent banks contracting or receiving more than lawful interest for the use of money. To permit a bank which had actually received illegal interest when sued for the penalty to chop around and call it a credit on the principal would vitiate the vindicatory clause of the statute. In such case the taking would amount to nothing more than a contracting to receive. The statute inflicts twice the penalty for taking that it does for contracting." In the case of Citizens' Nat. Bank, etc., v. Forman's Assignee, 111 Ky. 206, 63 S. W. 454, 757, 56 L. R. A. 673, we have a divided court; four sustaining the majority opinion and three dissenting. In the majority opinion are found these suggestive statements: "There being no appropriation of any part of this payment by the debtor to the payment of interest as such, the law will not presume an application of it to an illegal and void obligation; nor will it permit the creditor to make such an application." And in construing the federal decisions this court uses these words: "In the Supreme Court decisions it seems to be recognized that usurious interest may be paid as such without the discharge of the entire obligation, including principal and interest, and that, if so paid, a cause of action will then arise for the penalty imposed for the actual taking of interest at the illegal rate." And the court cite Brown v. Marion Nat. Bank, supra, in support of the above proposition, and further cite the McBroom Case in support of the proposition that the creditor alone cannot make an application of payments of interest binding upon the debtor, and in determining the cause before them, which was decided by the Kentucky court on the ground that no cause of action had yet arisen, they based their decision upon the following fact alone: "A careful examination of the evidence in this case shows that none of the payments were appropriated by the debtor to the discharge of the interest." In the dissenting opinion in this same case, found at page 757 of 63 S. W., and page 222 of 111 Ky.,

the court in speaking of the fact as shown that payments had been made upon notes, and the new notes given in renewal for the balance due, wherein the amount of the new notes showed that usurious interest had been taken out of the payments that had been made, although there was no direct testimony by word of mouth that the debtor and creditor had in words agreed to such application of payments, the court say: "If Forman had walked into the bank on September 4th and said, 'I cannot pay you all of my note, but will pay the interest and all of the principal, except $2,431.66, and for that will execute a new note,' the effect of the transaction would have been just the same; for what is tacitly understood need never be expressed in words, and, where men by their conduct unmistakably say a thing, it is unnecessary that they should also go through the idle form of saying it in words. The interest that was included in the original note was charged, but not paid, when that note was given. It was paid, however, when that note was discharged and taken up, and a new note for a smaller amount executed." So in the case at bar, when we find the indorsements which appear on the back of the old notes showing the indorsement of interest paid at usurious rates, and these old notes taken up and new notes given in renewal, which new notes were for the amount remaining unpaid after allowing such usurious rates, it is certainly unnecessary to require any further proof that there was an application of the payments of usurious interest not only by the creditor, but also by the debtor. As was so well said by this same court: "The amount had been charged to Forman's account. It represented the interest on this money, and, if this was not a payment of interest, how can one ever be shown, unless the debtor puts the money in an envelope and indorses it, 'This money is paid on interest as such.'" And again: "Each usurious transaction is distinct, and must stand or fall alone. The purpose in limiting the action to two years from the time of each separate transaction complained of is to secure a speedy settlement of such matters while the facts are fresh or capable of proof, and to enable the banks to know their liabilities, so that they may intelligently declare dividends and carry on their business. Whether usurious interest has been paid in any trans-

action is simply a question of fact, to be determined, like other similar questions of fact, according to the real intention of the parties as shown by the evidence. The court is not to follow an abstract principle, and shut its eyes to the facts, when, under the evidence, there can be no difference of opinion as to what the parties actually intended among men of common intelligence acquainted with the business." The Kentucky court reiterated their views to the effect that, under the authorities, there can be such an application of payments of usurious interest by the parties thereto as to create a cause of action in the case of Second Nat. Bank, etc., v. Fitzpatrick, 111 Ky. 228, 63 S. W. 459, 62 L. R. A. 559.

In the case of Citizens' Nat. Bank, etc., v. Donnell, 172 Mo. 384, 72 S. W. 925, the court holds that as against the debtor application must be made upon the principal debt rather than on the unlawful interest, and that the burden is upon the bank in a case wherein it is contended that payments were applied upon interest to show such application by the parties. In discussing the doctrine of locus poenitentiæ, after referring at some considerable extent to different cases, all of which are cited by the appellants in their brief as supporting their doctrine of this case, they say: "Any such ruling would be in the face of express provisions of the statute, and thwart its very purposes. It would be an inducement to national banks to charge usurious interest, and when compelled to sue upon its paper containing usury, and that defense is pleaded simply say to the debtor, 'We will credit the amount of the usurious interest paid by you on the principal of your debt,' and thereby escape the penalty of the law. Certainly no such consequences were intended by it." This same case was appealed to the United States Supreme Court, opinion being found in 195 U. S. 369, 25 Sup. Ct. 49, wherein, in speaking of this same question of right of election, or as otherwise termed, locus poenitentiæ, the court say: "We perceive no warrant in the statute or the cases for the contention that the bank, when it brings the action and is met by the plea of usury, may avoid the forfeiture imposed by Rev. St. § 5198, in absolute terms by then declaring an election to remit the excessive interest." And certainly this proposition should not only apply to an action by a bank to collect on the

note, but, on the other hand, it should also apply in theory against the creditor whenever he has made an application of payment on usurious interest and suit is brought for the penalty, and should apply also on behalf of the creditor as against the debtor whenever the debtor was a party to such application.

In closing we would cite First Nat. Bank v. Smith, 36 Neb. 199, 54 N. W. 254. In this case the plaintiff was contending the same as the plaintiff in the case at bar, that the cause of action did not arise until the principal debt was paid, and the court says: "If the interpretation for which plaintiff contends should be adopted, then it would follow that a suit to recover the penalty for taking usurious interest by a national bank cannot be maintained until the loan is fully paid off. Stated differently, one who has paid large sums of money as illegal interest on a loan, and is unable to pay the entire debt, is not entitled to the benefit of the section. Such was not the intention of the Congress, nor is it the fair and reasonable import of the language of the section."

We are therefore satisfied that, under the facts in this case, there was a mutual application of many payments in satisfaction of usurious interest; that such mutual application was a usurious transaction as contemplated by the last part of section 5198, which transaction was complete the moment of such mutual application, whether it be at the time the payment was made or at the time of the renewal when such payment was figured on interest; that, upon such mutual joint application, there arose a situation that does not admit of the doctrine of locus pœnitentiæ; and that, therefore, there is no election on behalf of either party authorizing them to afterwards insist that the payments be applied to that part of the note which was legal; that for the above reasons the cause of action arises immediately when such mutual application is made and the statute of limitations commences then to run.

The judgment of the circuit court and the order denying a new trial are affirmed.